STATE of Minnesota, Respondent,

v.

Edward Herbert DANOWIT, Appellant.

No. C8–92–1032.

Court of Appeals of Minnesota.

March 16, 1993.

Review Denied May 11, 1993.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James A. Terwedo, Scott County Atty., Thomas J. Harbinson, Susan K. McNellis, Asst. County Attys., Shakopee, for respondent.

Steven P. Russett, Asst. State Public Defender, St. Paul, for appellant.

Considered and decided by LANSING, P.J., and SCHUMACHER and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Appellant Edward Herbert Danowit challenges his convictions for child abuse. He contends that he was deprived of a fair trial by the admission of out-of-court statements of the victim pursuant to Minn.Stat. § 595.02, subd. 3 (1990). Danowit also argues that the evidence is insufficient, that the trial court erred in its instructions to the jury, and that the legislature intended to limit conviction of a child's caretaker to the crime of malicious punishment of a child causing great bodily harm rather than assault in the first degree. We affirm.

## FACTS

In April 1990, Danowit began living with T.B. and her three-year-old daughter K.B., the victim of the child abuse crimes for which Danowit was convicted. Although Danowit is not K.B.'s biological father, she called him "Daddy" and he had declared that he was in charge of her discipline. In the summer of 1990, a babysitter noticed that K.B. was more withdrawn, had bruises on her back, torso and head, and had a large bald spot on her scalp. The babysitter testified that she had not made similar observations before Danowit moved in with T.B. and K.B.

In January 1991, T.B. went on maternity leave and gave birth to Danowit's son. Upon expiration of her leave, on March 4, 1991, T.B. returned to work. She left home that day at 6:30 a.m. At 7:46 a.m., Danowit called 911 and said that K.B. had fallen in the bathtub and was slipping in and out of consciousness. When paramedics arrived, Danowit told a paramedic that he had left K.B. alone in the bathtub while he fed the baby. Danowit claimed that when he returned ten minutes later, he found the child lying unresponsive in the bathtub.

While the paramedics were treating K.B., her heart stopped. At the hospital, the doctors initially treated her for shock caused by drowning or infection. When she did not respond, the doctors diagnosed hypothermia.

The doctors decided that the child required an extremely invasive treatment that involved pouring a hot saline solution down a tube into her stomach and into a tube placed in an incision below her naval. A doctor testified that the procedure was very risky and could cause burns to body tissue, perforations to the bowel and infection. K.B. responded to the treatment. A doctor testified that she would have died without medical intervention.

While treating K.B., medical personnel observed signs of child abuse. Her left scapula appeared to have been broken two to three weeks earlier, one of her big toes appeared to have been broken, and she had a bald spot on her head and multiple bruises about her body. The state presented expert medical testimony that it was unlikely that the injuries were caused accidentally.

Danowit was subsequently charged with first degree assault, third degree assault, malicious punishment of a child causing great bodily harm, malicious punishment of a child causing substantial bodily harm, and neglect of a child. The jury returned guilty verdicts on all five counts. The trial court sentenced Danowit on the first degree assault conviction to a 129 month prison sentence, a $500 fine and restitution.

## ISSUES

1. Did the trial court err in admitting K.B.'s out-of-court statements pursuant to Minn.Stat. § 595.02, subd. 3 (1990)?

2. Did the state prove beyond a reasonable doubt that Danowit committed intentional acts that resulted in great or substantial bodily harm to K.B.?

3. Did the trial court err in refusing to instruct the jury that (a) they could convict Danowit of assault in the first degree only if they found beyond a reasonable doubt that he caused great bodily harm to K.B. by intentionally putting her out on a deck or porch in freezing weather; and (b) they could convict Danowit of assault in the third degree only if they found beyond a reasonable doubt that he caused substantial bodily harm to K.B. by intentionally breaking her scapula and toe?

4. Was Danowit deprived of his right to a fair trial by the trial court advising the jury that they would not be allowed to review any testimony or evidence beyond that which they were given to take to the jury room?

5. Could Danowit be prosecuted for both first degree assault and malicious punishment of a child causing great bodily harm?

6. Does appellate review of records examined by the trial court in-camera reveal that the state failed to disclose evidence relevant to Danowit's defense?

7. Should this court grant Danowit's motion to strike a letter from the state filed without leave of this court that purports to bring to this court's attention "mischaracterizations of the evidence and law" in Danowit's reply brief?

## ANALYSIS

1. Danowit challenges the admission of K.B.'s out-of-court statements pursuant to Minn.Stat. § 595.02, subd. 3 (1990).[1] Danowit now claims that he objected at trial to the admission of (a) statements K.B. made to a psychologist and a pediatrician, and (b) T.B.'s testimony regarding K.B.'s statements to T.B. because T.B.'s self-interest gave her a motive to falsely report those statements. Danowit also raises the issue of the confrontation clause but admits that he does so for the first time on appeal. *See State v. Larson,* 472 N.W.2d 120, 125 (Minn.1991) (when child's statement admitted under residual exception to hearsay rule, confrontation clause requires reliability be established from totality of circumstances surrounding making of statement, not evidence corroborating truth of matter asserted in statement), *cert. denied* —— U.S. ——, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992) (citing *Idaho v. Wright,* 497 U.S. 805, 819–20, 110 S.Ct. 3139, 3148–49, 111 L.Ed.2d 638 (1990)).

Nonetheless, Danowit argues that this court should review all K.B.'s extrajudicial statements that were admitted into evidence to prevent a substantial injustice. *See State v. Heidelberger,* 353 N.W.2d 582, 587 (Minn.App.1984) (if defendant has forfeited right to raise issue on appeal by

---

1. Minn.Stat. § 595.02, subd. 3 provides that an out-of-court statement of a child under age ten relative to physical abuse is admissible if the trial court, after an in limine hearing, finds sufficient indicia of reliability is provided by the time, content and circumstances of the statement and the reliability of the person to whom it is made, and, if the child is unavailable as a witness because of incompetence, that there is corroborative evidence of the act.

failing to object at trial, reviewing court will only order new trial to prevent conviction of innocent person), *pet. for rev. denied* (Minn. Sept. 12, 1984). We hold that the record supports the trial court's finding that K.B.'s statements were spontaneous and not the result of suggestion or leading. *See State v. Lanam*, 459 N.W.2d 656, 661 (Minn.1990) (factors to consider include spontaneity, whether party to whom statement made had preconceived notion, whether statement in response to suggestion or leading, whether child had motive to fabricate and whether statement of type child likely to fabricate), *cert. denied* 498 U.S. 1033, 111 S.Ct. 693, 112 L.Ed.2d 684 (1991).

■ Danowit concedes that K.B.'s statements to the nurses in the hospital were spontaneous, but argues that other statements are unreliable because the child was questioned frequently and displayed signs of "coaching." [2] Danowit also points out that the trial court found that K.B. understood the difference between truth and falsity, but ruled that her memory had faded and she was incapable of giving direct answers to questions. We do not agree that K.B.'s incompetency to testify at trial impeaches her ability to accurately perceive or relate events when she made the extrajudicial statements. *See State v. Edwards*, 485 N.W.2d 911, 916 (Minn.1992).

■ In any event, Danowit does not discuss K.B.'s statement made the first night out of the hospital. The child told her foster mother that Danowit had locked her outside without shoes or socks and she had gone to the hospital because she got very cold. This statement was made at a time, in a setting and under circumstances showing it to be reliable. Any other statements were cumulative, and, if it was error to admit any of them, it was harmless beyond a reasonable doubt. *See Larson*, 472 N.W.2d at 126–27 (statements can be ad-

missible for non-hearsay purpose of showing consistency).

■ 2. Danowit challenges the sufficiency of the evidence that he committed intentional acts that caused either great or substantial bodily harm to K.B. Danowit asserts that the state did not prove beyond a reasonable doubt that he caused the child's hypothermia by forcing her to stand outside in the cold without adequate clothing. Danowit also claims that the state did not prove beyond a reasonable doubt that he broke the child's scapula or toe.

Danowit concedes that the state established that K.B. fit the "battered child syndrome." *See State v. Loss*, 295 Minn. 271, 280, 204 N.W.2d 404, 409 (1973) (allowing evidence of battered child syndrome to show intent by circumstantial evidence). Danowit argues, however, that the other circumstantial evidence is insufficient to show intent. *See State v. Jurgens*, 424 N.W.2d 546, 555 (Minn.App.1988) (evidence of battered child syndrome coupled with other circumstantial evidence sufficient to support assault conviction), *pet. for rev. denied* (Minn. July 6, 1988).

A review of the record reveals strong evidence that Danowit intentionally caused great bodily harm to K.B. There is no merit to Danowit's contention that the state did not disprove his claim that the child's hypothermic condition resulted from an accidental fall in the bathtub. The jury heard (a) expert medical testimony that it would be virtually impossible for K.B. to have become hypothermic in a matter of ten minutes in cold bath water; (b) testimony that a police officer found the bath water to be lukewarm shortly after the arrival of the paramedics; and (c) expert medical testimony that K.B.'s injuries were consistent with her being outside in the cold for a period of forty-five minutes.

Additionally, the jury heard testimony from which it could conclude that Danowit

---

**2.** Danowit gives as an example that, while in the hospital, K.B. told a social worker she was afraid her father was going to jail and was going to take her mother and brother away. She threw her arm up in the air and said, "I don't know what I'm going to do. I just don't know what I'm going to do. I think I'm just going to

go crazy." We do not agree with Danowit that this statement shows K.B. was coached by T.B. It more likely shows that K.B. had been influenced by Danowit. *See Larson*, 472 N.W.2d at 127 (victim's motivation to protect accused considered in determining reliability of statement).

had previously exhibited a pattern of physical abuse of K.B. Among other things, there was testimony that Danowit had earlier locked her outside in the cold without shoes and that Danowit had exclusive control of her at the time she developed hypothermia. The evidence is sufficient to show that Danowit intentionally caused great bodily harm to K.B.[3]

■ Danowit argues that the state did not show that he had exclusive control of K.B. when her scapula and toe were broken and therefore did not show intent beyond a reasonable doubt. The evidence did show, however, that Danowit was the primary caretaker of the child and, by his own admission, was in charge of discipline. Also, there was no evidence that T.B., the other person who shared control with Danowit, had ever mistreated K.B. Furthermore, K.B. did not begin to exhibit signs of battered child syndrome until Danowit moved in with her and T.B. *See id.* at 555–56 (no evidence of significant abuse of victim by defendant's spouse). We hold that the evidence is sufficient to show that Danowit committed third degree assault by breaking K.B.'s scapula and toe.

■ 3. Danowit argues that the trial court erred in refusing to instruct the jury that (a) they could convict him of assault in the first degree only if the jury found beyond a reasonable doubt that he caused great bodily harm to K.B. by intentionally putting her out on a deck or porch in freezing weather; and (b) they could convict him of assault in the third degree only if they found beyond a reasonable doubt that he caused substantial bodily harm to K.B. by intentionally breaking her scapula and toe. The evidence, however, is strong that Danowit intentionally left K.B. outside in the cold. The jury also could properly infer that Danowit broke K.B.'s scapula or toe. Therefore, it is highly unlikely that the jury based its guilty verdicts on the charges of first or third degree assault on other mis-

treatment by Danowit. *See State v. Carlson*, 268 N.W.2d 553, 561 (Minn.1978) (new trial for inadequate jury instructions will not be granted if it is unlikely jury was confused). Furthermore, the evidence of other mistreatment by Danowit was admissible to characterize the relationship between K.B. and Danowit. *State v. Currie*, 400 N.W.2d 361, 367 (Minn.App.1987), *pet. for rev. denied* (Minn. April 17, 1987).

■ 4. Danowit contends that he was deprived of his right to a fair trial by the trial court advising the jury that they would not be allowed to review any testimony or evidence beyond that which they were given to take to the jury room. Danowit concedes he did not object to this disallowance. *See State v. McMorris*, 373 N.W.2d 593, 595 (Minn.1985) (defendant's failure to object to trial court's handling of jury requests to review evidence generally constitutes waiver). We do not agree that this is a "close case." *See State v. Spaulding*, 296 N.W.2d 870, 878 (Minn.1980). Accordingly, we decline to overlook Danowit's failure to object.

■ 5. Danowit argues that the statute that specifically prohibits malicious punishment of a child causing great bodily harm is an exception to the general statute that prohibits assault in the first degree, and therefore should prevail. Because the maximum penalty for the former crime is ten years and the maximum penalty for the latter crime is twenty years, Danowit contends it was error to charge him with assault in the first degree. *Compare* Minn. Stat. § 609.377 (1990) *with* Minn.Stat. §§ 609.221 and 609.02, subd. 10(1) (1990). We disagree. The general rule is that, unless there is contrary legislative intent or class discrimination, the state may prosecute under any pertinent statute "without regard to the penalty." *State v. Chryst*, 320 N.W.2d 721, 722 (Minn.1982).

Danowit misplaces reliance on *State v. Kalvig*, 296 Minn. 395, 398, 209 N.W.2d

---

**3.** Danowit claims that K.B.'s first statement when she "came to" indicated that she fell in the bathtub. The jury did not have to believe that K.B. made that statement, however. The statement was reported in the hospital discharge summary, but the doctor to whom K.B. allegedly made the statement testified that the discharge summary was in error and no such statement was made to him.

678, 680 (1973) (affirming dismissal of felony theft charges on ground legislature intended welfare fraud to be a misdemeanor). Application of statutory rules of construction do not yield the same result in this case as they did in *Kalvig*. Minn.Stat. § 645.26, subd. 1 (1990) provides that, when a general provision and a special provision are in conflict, they should be construed to give effect to both.

> If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision.

*Id.*

The two statutes here are not irreconcilable. *See State v. Williams*, 396 N.W.2d 840, 843 (Minn.App.1986) (*Kalvig* court "simply recognizing the obvious—the general theft statute and the welfare fraud statute had identical elements but differing penalties"). Here, the elements of the two crimes are different. The elements of assault in the first degree are that the actor intentionally inflicts bodily harm and great bodily harm results. *See* Minn.Stat. §§ 609.221 and 609.02, subd. 10(1). The elements of malicious punishment of a child resulting in great bodily injury are that the actor, who is a caretaker, by an intentional act with respect to a child, uses unreasonable force or cruel discipline under the circumstances and great bodily harm results. *See* Minn.Stat. § 609.377.

Because the two crimes are not irreconcilable, "there is no reason to believe that the legislature intended to limit the prosecutor's discretion to prosecute the alleged conduct." *Chryst*, 320 N.W.2d at 723. We hold that Danowit could be prosecuted for both first degree assault and malicious punishment of a child causing great bodily harm.

6. The state does not object to Danowit's request that this court review records sealed by the trial court after in-camera review. We have done so. At issue are notes in connection with a meeting among the prosecutor, the police department and the department of human services, in which they discussed the investigation. The notes do not provide evidence that the prosecutor withheld statements of trial witnesses or that investigators ignored exculpatory information.

7. We grant Danowit's motion to strike a letter submitted by the state without leave of this court after completion of briefing.

Danowit has filed, a pro se brief. We have already expressly addressed some of his arguments. We have carefully considered the remainder and have determined that they are without merit.

Affirmed.