**In the Matter of the WELFARE OF S.R.A.**

**No. CX–94–1781.**

Court of Appeals of Minnesota.

Feb. 7, 1995.

Review Denied March 29, 1995.

Stephen C. Fiebiger, Stephen C. Fiebiger & Assoc., Minneapolis, for appellant.

Michael O. Freeman, Hennepin County Atty., Andrew J. Mitchell, Asst. County Atty., Minneapolis, for respondent Hennepin County.

Gerald M.B. Chester, Minneapolis, for Guardian Ad Litem Ruth Sherman.

Considered and decided by PARKER, P.J., and NORTON and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

Appealing from an order of the juvenile court terminating his parental rights, Herbert Davis alleges that the court (1) denied him due process of law in ordering that his parental rights be terminated; (2) erred in making findings of fact and conclusions of law unsupported by sufficient evidence to order that his parental rights be terminated; and (3) committed reversible error in denying his pretrial motions. We disagree and affirm.

## FACTS

SRA was born on January 6, 1987. Six months later, appellant Herbert Davis acknowledged parentage. Appellant lived "on and off and on" with SRA and her mother through 1989. During this period, he also spent some time in Texas with his wife of 20 years, from whom he obtained a divorce in 1990.

In February 1988, appellant contacted the Hennepin County Bureau of Social Services (the county) to report child abuse. The substance of the report was that appellant and SRA's mother had been abusing alcohol and cocaine. That year, he entered inpatient treatment for cocaine addiction. He did not complete the program, however, and resumed use of cocaine.

In early 1989, SRA's mother telephoned the foster mother of two of her other children to report that she no longer wanted to take care of SRA. At the time SRA was placed in foster care, she was six to nine months developmentally delayed and also underweight for her age. In June 1989, appellant admitted that SRA was a child without proper parental care, and the juvenile court awarded legal custody of her to the county. The county presented a case plan at a scheduled August 1989 hearing, which appellant chose not to attend. The case plan provided, among other things, that he would undergo a psychological and parenting evaluation and a chemical dependency evaluation.

Over the next three years, appellant had little contact with SRA. In May 1991, the county filed a petition to terminate the parental rights of both appellant and of SRA's mother. Beginning in March 1992, appellant began to visit SRA. In August 1992, he completed a 30–day inpatient chemical dependency program, after which he resided in a halfway house. The halfway house did not allow overnight visitation. In January 1993, appellant moved into transitional housing

and, over the next six months, had "a few" overnight visits.

In July 1993, SRA told her guardian ad litem that he had touched her genitalia and anus during one of the overnight visits. As a result, SRA's social worker suspended all visitation between her and her father. The following month, the social worker informed appellant that he could have supervised visitation with SRA. SRA was interviewed at Corner House, but her interviewer was unable to form an opinion as to whether she had been abused. The interviewer did note that SRA was hiding something. SRA's therapist similarly was not able to discern whether she was a victim of sexual abuse. Appellant adamantly denies that any improper touching occurred. In August 1993, he visited SRA under supervised conditions. Appellant neither visited nor contacted SRA again after this single supervised visit.

On January 14, 1993, the juvenile court conducted hearings on the May 1991 petition for termination of parental rights. Appellant appeared, represented by counsel; he admitted that he was diagnosed as chemically dependent and that this condition interfered with his parenting ability. Appellant further admitted that the county provided him with a chemical dependency assessment, a treatment program, transitional housing, psychological evaluation services, and parenting assessment services. The juvenile court concluded that SRA was a child in need of protective services, but stayed the order for six months to allow appellant to complete a court-ordered plan. After reviewing the case plan with his counsel, appellant agreed to the terms of the plan on the record at the January 1993 hearing. However, the court did not file the order containing the case plan until November 4, 1993.

On November 9, 1993, the county filed a new petition for termination of parental rights. SRA's mother voluntarily terminated her parental rights in April 1994. Appellant challenged the termination of his rights and, before trial, filed motions *in limine* seeking to suppress any statements concerning his sexual abuse of SRA. In July 1994, the trial court terminated all of appellant's parental rights with regard to SRA. Appellant made no motion for a new trial, and appealed.

## DISCUSSION

### I.

■ As an initial matter, appellant challenges the trial court's denial of his motions to suppress SRA's statements concerning sexual abuse by him. The county, however, argues that he waived his right to review of evidentiary rulings because he failed to move the trial court for a new trial.

The Minnesota Supreme Court has ruled:

[M]atters such as trial procedure, evidentiary rulings and jury instructions are subject to appellate review only if there has been a motion for a new trial in which such matters have been assigned as error.

*Sauter v. Wasemiller*, 389 N.W.2d 200, 201 (Minn.1986). This court held that the "well-established" rule announced in *Sauter* applied to dependency and neglect cases. *In re Welfare of S.G.*, 390 N.W.2d 336, 340 (Minn. App.1986); *see also In re Welfare of D.N.*, 523 N.W.2d 11, 13 (Minn.App.1994), *pet. for rev. denied* (Minn. Nov. 29, 1994). Appellant, however, argues that *S.G.* and *D.N.* are distinguishable in that the subject of both cases was parental neglect and not termination of parental rights. In essence, he argues that the finality of an order for termination prohibits the application of *Sauter*, *S.G.*, and *D.N.* to this case.

Termination of parental rights, unlike an adjudication of neglect (*S.G.* and *D.N.*), does not contemplate the eventual reunification of parent and child. To the contrary, the termination aimed at is final and permanent. Given the finality of termination, we grant discretionary review in "the interests of justice" and consider the evidentiary issues raised on a direct appeal from a termination order even though the parent has failed to move for a new trial. *See* Minn.R.Civ.App.P. 103.04 ("The appellate court may reverse, affirm or modify the judgment or order appealed from or take any other action as the interest of justice may require").

■ Even when we ignore the procedural shortcoming in appellant's claim, we find

that appellant's argument that the juvenile court erred in admitting SRA's allegation of sexual abuse fails substantively. The child told her guardian ad litem that appellant had touched her genitalia and anus during one of the overnight visits. The statements were made spontaneously and came as a complete surprise to the guardian ad litem. We find that the time, setting, and circumstances of SRA's statement indicate that it is reliable, and the trial court did not err in admitting this evidence. *See* Minn.Stat. § 595.02, subd. 3 (1992) (allowing admission of certain out-of-court statements alleging sexual abuse, if the statements are reliable); *see also State v. Goldenstein*, 505 N.W.2d 332, 343–44 (Minn. App.1993) (statements a boy made to his foster mother without prompting were spontaneous and reliable enough to allow admission under Minn.Stat. § 595.02, subd. 3), *pet. for rev. denied* (Minn. Oct. 19, 1993); *State v. Danowit*, 497 N.W.2d 636, 639 (Minn.App. 1993) (statement made by a child to her foster mother describing the reasons she went to the hospital was made "at a time, in a setting and under circumstances showing it to be reliable"), *pet. for rev. denied* (Minn. May 11, 1993). In addition, we conclude that the letter from SRA's therapist and the foster mother's testimony concerning the child's allegations of abuse were merely cumulative and, as such, their admission into evidence was not prejudicial. *See State v. Larson*, 472 N.W.2d 120, 125 (Minn.1991) (admission of statements for the purpose of showing consistency was not in violation of the hearsay rules), *cert. denied*, 502 U.S. 1071, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992); *Danowit*, 497 N.W.2d at 639 ("Any other statements were cumulative, and, if it was error to admit any of them, it was harmless beyond a reasonable doubt").

## II.

Appellant further argues that the trial court did not have a sufficient basis to conclude that termination was appropriate. The trial court found that appellant (1) was palpably unfit to be a parent; (2) substantially, continuously, and repeatedly refused and neglected to comply with the duties imposed upon him by the parent-child relationship; and (3) abandoned SRA. This court's sole function on review of a termination case is to "determine whether the trial court's findings address the statutory criteria, whether those findings are supported by substantial evidence, and whether those findings are clearly erroneous." *In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn.1990).

Minnesota law allows for the termination of parental rights if the court finds the parent is "palpably unfit."

> [A] parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific condition directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child.

Minn.Stat. § 260.221, subd. 1(b)(4) (1992). Appellant contends that the trial court's ruling only mimicked the statute and contained no meaningful findings.

Appellant's argument, however, is without merit. The trial court methodically and painstakingly detailed appellant's record with regard to narcotics. Moreover, the record reflects the following: (1) appellant has neither visited SRA nor inquired about her well-being since August 1993; (2) he apparently has failed to conquer his chemical addiction; (3) he admitted his involvement in at least two incidents of domestic abuse, at least one of which was in front of the victim's children; (4) he has been unable to maintain a stable residence; (5) he has a history of unstable relationships; and (6) the trial court found appellant sexually abused SRA.

Because the record supports the statutory definition of palpable unfitness, we cannot say that the trial court was clearly erroneous. *See In re Welfare of C.K.*, 426 N.W.2d 842, 847 (Minn.1988) ("The parents' rehabilitation, or lack thereof, during all periods * * * leading up to the termination hearing is relevant to the court's ultimate decision"); *In re Welfare of R.T.B.*, 492 N.W.2d 1, 3 (Minn.App. 1992) (father palpably unfit due to alcohol and drug abuse, incarceration, and failure to

maintain any relationship with child for more than two years). Because we agree with the trial court that appellant is palpably unfit to be a parent, we need not consider the trial court's other grounds for termination. *See* Minn.Stat. § 260.221, subd. 1(b) (1992) (noting that any single statutorily enumerated reason for termination constitutes sufficient ground upon which a trial court can order termination).

The record also reflects that termination of appellant's parental rights would serve SRA's best interests. The child's mother released her to foster care when she was only two years old. Since then, the child has moved through four different foster homes. SRA's best interests mandate that she be provided with some sort of security in her life. Appellant, with his instability of residence and history of domestic abuse, cannot provide this security. Moreover, throughout SRA's life, her father has lived with her for only three months. During that time, he returned to Texas to live with his wife, spent $100–$150 per day on cocaine, and entered and failed rehabilitation. Since August 1993, he has failed not only to visit SRA, but also to inquire about her well-being or to send her cards or gifts. That appellant chose not to visit her because he believed the county treated *him* unfairly demonstrates that he is concerned about his own interests, rather than those of the child. Finally, we note that SRA's guardian ad litem recommended termination of appellant's parental rights.

### III.

■ As a final matter, we turn to appellant's allegation that the county violated his rights to due process under both the United States and Minnesota Constitutions. He argues that the county violated both his substantive and procedural rights to due process. The procedural aspect of his claim centers on the county's failure to give him annually updated case plans, as required by law. Minn.Stat. § 260.191, subd. 1e, provides that "[f]or each disposition ordered, the court shall order the appropriate agency to pre-

pare a written case plan." Subdivision 2, in turn, states explicitly:

> All orders under this section shall be for a specified length of time set by the court *not to exceed one year*. However, before the order has expired and upon its own motion or that of an interested party, the court shall * * * renew the order for another year or make some other disposition in the case.

(Emphasis added.) We recognize that the county erred procedurally by failing to file annual case plans between 1989 and 1993. *See In re Welfare of Wachlin*, 309 Minn. 370, 372–73, 245 N.W.2d 183, 183–84 (1976) (appellant's claim was "substantial," but a subsequent order superseded the order at issue before the statutory one-year limit expired; thus, appellant's right to due process was not violated).

■ Nonetheless, the focus of a termination proceeding is on the child's best interests, rather than those of the parent. *See In re Welfare of J.J.B.*, 390 N.W.2d 274, 279 (Minn.1986) (best-interests-of-the-child standard is the paramount consideration in termination of parental rights proceedings). Consequently, courts must be conscious of the child's substantive right, elucidated in the best-interests-of-the-child principle, to be raised in a secure home. Cognizance of that right, in turn, requires a balancing of the child's best interests against any procedural defects raised by the parent. After applying this balancing test to the record before us, we hold that the best interests of this child outweigh the technical violation of appellant's right to due process.[1] *Accord In re Welfare of J.W.*, 391 N.W.2d 791, 795 (Minn.1986) (child's interests in establishing parentage prevailed over father's right to a hearing on the merits when father deprived factfinder of the most accurate evidence available); *Doe v. Hennepin County*, 858 F.2d 1325, 1329 (8th Cir.1988) ("the state may intervene on behalf of abused children, thereby infringing upon a parent's liberty interest in the family if the

---

1. In 1988 the legislature amended the juvenile code to provide that the "paramount consideration in all proceedings for the termination of parental rights is the best interests of the child." 1988 Minn. laws ch. 514, § 3 (codified as amended at Minn.Stat. § 260.011, subd. 2(b)); *see also* Minn.Stat. § 260.221, subd. 4 (entitled "Best interests of child paramount").

state provides an adequate postdeprivation hearing").

In holding that the best interests of the child may be held paramount to a parent's "liberty" interest in filiation, we recognize that the best interests of the child standard is firmly rooted in American jurisprudence. *See Michael H. v. Gerald D.*, 491 U.S. 110, 127–29 n. 6, 109 S.Ct. 2333, 2344–45 n. 6, 105 L.Ed.2d 91 (1989) (Scalia, J., portion of plurality opinion in which only Chief Justice Rehnquist joined).

Appellant also argues that the county violated notions of fundamental fairness by giving him only five days in which to comply with a case plan. In this case the county filed the November 9, 1993, termination petition only five days after the court officially filed the January 1993 case plan. Although we are concerned that it took 11 months to file appellant's case plan, we determine that, in this case, the seemingly haphazard practice was a mere technical failure only. *See Wibbens v. Wibbens*, 379 N.W.2d 225, 227 (Minn.App.1985). In particular, we find appellant's claim that he did not know the contents of the case plan to be disingenuous. Appellant was present and represented by counsel at the January 1993 hearing during which his case plan was ordered. He had the opportunity to discuss the case plan with his counsel and even accepted the terms of the case plan under oath and on the record. In effect, appellant seeks to place form over substance. His absences from the state and shifting residential arrangements with women and other friends exacerbated the difficulty faced by counselors and social workers in communicating with him, as did the lifestyle attendant upon his chemical addiction. As indicated earlier, this court will not countenance such an argument when the child's best interests indicate otherwise.

## DECISION

Because of the finality of a termination proceeding and the accelerated schedule of review, this court grants discretionary review and considers appellant's argument concerning evidentiary matters even though appellant failed to move for a new trial. Nonetheless, we hold that the juvenile court properly admitted SRA's out-of-court statements alleging and describing incidents of sexual abuse. Appellant's sexual abuse of his child, when coupled with his history of domestic abuse, his chemical dependency, and his unstable residences, makes him palpably unfit to parent SRA. Any procedural defects the county's case-plan practice caused were technical in nature and outweighed by SRA's best interests, which require termination of appellant's parental rights.

**Affirmed.**