*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1227**

In the Matter of the Welfare of the Children of: M. M. M., Parent.

**Filed February 26, 2024**
**Affirmed**
**Wheelock, Judge**

Hennepin County District Court
File No. 27-JV-23-410

Brooke Beskau Warg, Hennepin County Adult Representation Services, Minneapolis, Minnesota (for appellant A.A.A.)

Mary F. Moriarty, Hennepin County Attorney, Mary M. Lynch, Senior Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Human Services)

Gemma Kirk, Minneapolis, Minnesota (guardian ad litem)

Considered and decided by Slieter, Presiding Judge; Johnson, Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**WHEELOCK**, Judge

In this appeal from the district court's termination of his parental rights to three children, appellant father argues that (1) he is entitled to reversal and remand because service of notice of the admit-deny hearing by publication was not reasonably calculated to reach him and thus violated his right to due process and (2) the evidence does not clearly and convincingly establish that the department made reasonable efforts to rehabilitate him and reunify him with the children. We affirm.

## FACTS

Appellant father, A.A.A., is the adjudicated father of G.A.A. and the presumed father of N.S.A. and T.M.A. (collectively, the children). Mother, M.M.M., was the children's sole legal and physical custodian until they were placed in foster care, and father was not actively involved in the children's care at that time. At the time father's parental rights to the children were terminated in May 2023, all three were under the age of five.

Respondent Hennepin County Human Services (the department) filed a petition requesting that the district court adjudicate the children as children in need of protection or services (CHIPS) in November 2021. Because the department did not have an address for father and believed he was living out of state, the department served father by publication.

Shortly after the department filed the CHIPS petition, the children were placed in relative foster care pursuant to Minn. Stat. § 260C.193, subd. 3 (2022), and the department initiated a case plan for father. The assigned social worker reviewed the case plan with father. Father's case plan required him to meet with the social worker so that his needs could be assessed for appropriate services; submit to random urinalysis tests to verify his sobriety; after 30 days of verified sobriety, complete a combined parenting and psychological assessment and follow recommendations pursuant to that assessment; cooperate with the department and sign releases of information; obtain safe and suitable housing for the children; establish paternity; and visit the children. In July 2022, the district court adjudicated the children CHIPS because, as relevant to father, he was not involved in caring for the children, the department could not locate him despite diligent efforts, and he was not complying with his case plan.

2

In February 2023, the department filed a termination-of-parental-rights (TPR) petition in which it alleged that father was "reportedly residing out of state." Following a hearing, the district court ordered father to appear in person for the admit-deny hearing and noted that the department planned to serve him by publication. Pursuant to Minn. R. Juv. Prot. P. 16.02, subd. 3, the department filed an affidavit of diligent efforts to locate father stating that an attempt to serve him at his last known address in Illinois had failed, that the department had conducted multiple searches, and that some searches returned no address at all while other searches returned only former addresses, including one in Minneapolis, Minnesota, one in Las Vegas, Nevada, and two in Illinois. The district court ordered service by publication, but the record does not indicate that the district court explicitly approved a location for service as the rule requires. To accomplish service on father, the department published the summons and notice of the admit-deny hearing in *Finance & Commerce*, a daily newspaper of general circulation in Minneapolis, Minnesota.

Father did not appear at the admit-deny hearing on the TPR petition, and the department moved the district court to proceed by default pursuant to Minn. R. Juv. Prot. P. 18.01. Counsel for father appeared at the hearing and objected to proceeding by default, on the grounds that father had emailed her earlier that week but did not respond when she called him back. Father's counsel then requested that the district court allow father to cure the default by voluntarily terminating his parental rights and that the district court give father an opportunity to file the necessary document to do so. Counsel for father did not request a continuance of the hearing or object on the basis of ineffective service. The social worker testified that she had spoken with father about the hearing earlier that week and had

3

encouraged him to contact his attorney to discuss appearing remotely if he was still out of state. She also testified that she had ensured he had access to a working cell phone and an internet connection to attend the hearing.

The district court granted the department's motion to proceed by default but agreed that father could cure the default by submitting voluntary-termination paperwork within one week; it later extended the time for father to file that paperwork by an additional ten days. The admit-deny hearing proceeded, and the department presented testimony from the social worker and the guardian ad litem in support of the TPR petition.

The social worker testified that father reportedly had engaged in some chemical-health treatment in Chicago shortly after the children were adjudicated CHIPS, but she was unable to verify that father completed outpatient treatment because father did not provide releases of information for the treatment facilities. She tried to arrange urinalysis tests in Chicago multiple times, but father's frequent moves complicated these efforts. She gave father the option to work with providers of his choosing and sign releases for urinalysis test results, but father did not comply with those requests.

The social worker also testified that she had been able to meet with father in person only three times in the nearly one and a half years since the CHIPS petition had been filed, that phone calls and text-message contact with him were sporadic, and that father had not met with the children during that entire time despite being offered in-person or virtual visitation at his convenience. He had been working as an over-the-road truck driver and had been out of state in Illinois, Georgia, and Wisconsin at various times during the proceedings. In addition, father had not consistently provided information about where he

was living, and the department had never been able to serve him personally with any petitions or documents. The social worker also testified that father had an active warrant for his arrest in Minnesota. She said that she had attempted to assess father's ability to care for the children, but he never completed a mental-health and parenting assessment, even though the department paid for the assessment and arranged for it to take place in Illinois, where father was believed to be living at the time.

Father's communication with the social worker was "tangential," "rambling," and sometimes threatening. He did not inquire with the social worker or the children's foster parents about the children's well-being, instead expressing his frustration and anger about the case. He equivocated as to his position on the termination of his parental rights, at times suggesting that he would voluntarily terminate his rights and that the children were in a good place with their foster parents and at other times stating that he wanted to "fight for" the children. In addition, the guardian ad litem who was appointed between the CHIPS adjudication and the TPR proceedings testified that she never had been able to contact father successfully during her time working on the case.

After the admit-deny hearing, father never submitted voluntary-termination paperwork, notwithstanding his counsel's request, and the district court ultimately filed an order terminating father's parental rights as to all three children. In its order, the district court found that father had notice of the admit-deny hearing and was served by publication. The district court made extensive factual findings about the department's efforts to rehabilitate father and reunite him with the children and about father's hindrance of those

5

efforts. Father did not move for amended findings or a new trial after the district court filed its order.

Father appeals.

## DECISION

Father argues that the district court's order terminating his parental rights should be reversed and remanded because the district court (1) violated his right to due process by allowing service by publication that was not reasonably calculated to reach him and (2) erred by finding that the evidence clearly and convincingly established that the department made reasonable efforts to rehabilitate father and reunite him with the children.

## I. Father forfeited his argument that service was ineffective by failing to raise it in district court.

Father first argues that his right to due process was violated because he was not properly served with notice of the admit-deny hearing in the TPR proceedings.[1] He does not challenge the district court's decision to approve service by publication; rather, he argues only that service by publication in a Minneapolis newspaper was ineffective because

---

[1] Father suggests that the allegedly ineffective service resulted in part from the district court's failure to set a location for service by publication as required by Minn. R. Juv. Prot. P. 16.02, subd. 3. While the record does not indicate that the district court explicitly set a location, father's failure to object precludes appellate review. *See Scroggins v. Solchaga*, 552 N.W.2d 248, 253 (Minn. App. 1996) ("On appeal of a default judgment, the party in default may not . . . raise procedural irregularities not raised below, if adequate relief was available by motion to the district court."), *rev. denied* (Minn. Oct. 29, 1996). We note, however, that rule 16.02, subdivision 3, states that "[s]ervice by publication shall be completed in a location approved by the court." While we may infer that the district court approved the location because it found that the department accomplished service by publication, it is a better practice for the district court to approve the location expressly on the record.

he was not living in Minnesota and thus it was not reasonably calculated to reach him. Father acknowledges that he did not raise this issue to the district court but asserts that it is properly before this court under the modified scope of review that applies when no posttrial motion is made; in the alternative, he asks us to review it in the interest of justice. Therefore, we first address whether the question of service of notice is properly before us on these facts.

Minnesota Rules of Juvenile Protection Procedure 21.03 and 22.02 direct a party seeking relief from a final order to move the district court for relief via amended findings, a new trial, or "such other relief as may be just." When no posttrial motion is made, the scope of our review is limited to "whether the evidence sustains the findings of fact[,] whether such findings sustain the conclusions of law and the judgment," and "substantive legal questions . . . properly raised during trial." *In re Welfare of Child of S.S.W.*, 767 N.W.2d 723, 733 (Minn. 2009) (quotation omitted). A posttrial motion "gives the court time to consider the context of the objection and the effect the error may have had on the outcome of the case." *Alpha Real Est. Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 310 (Minn. 2003). "This permits the court to more fully develop the record for appellate review or to correct its own mistake and alleviate the need for appellate review." *Id.*

Here, to the extent father's argument implicates a question of law, he did not raise it to the district court at the time the parties discussed the method of service; before or after the notice was published; or at trial by default, when father's counsel objected to proceeding with the admit-deny hearing. Because father did not raise the issue, we

7

conclude that he forfeited his argument about whether publication in a Minneapolis newspaper was reasonably calculated to reach him. *See In re Welfare of C.L.L.*, 310 N.W.2d 555, 557 (Minn. 1981) (declining, in a TPR appeal, to address a constitutional argument made for the first time on appeal); *State v. Vasko*, 889 N.W.2d 551, 559 n.6 (Minn. 2017) (citing *C.L.L.*).

Father nevertheless argues that we should exercise our discretion to grant relief under Minn. R. Civ. App. P. 103.04, which permits us to review and decide matters that were not raised in the district court "as the interest of justice may require." We consider several factors when determining whether to exercise our discretion under rule 103.04, including whether doing so would prejudice other parties. *See Miller v. Soo Line R.R. Co.*, 925 N.W.2d 642, 653 (Minn. App. 2019).

Here, remanding to the district court to address the propriety of service would only cause further delay, contravening the legislature's clear mandate that the best interests of the children are paramount in juvenile-protection proceedings. *See* Minn. Stat. §§ 260.012(a), 260C.001, subds. 2(a), 3, 260C.301, subd. 7 (2022); *In re Welfare of Child of A.M.C.*, 920 N.W.2d 648, 661 (Minn. App. 2018) (stating that the child's "paramount best interests . . . would not be advanced by further delay of a safe and permanent placement"); *In re Welfare of S.R.A.*, 527 N.W.2d 835, 839 (Minn. App. 1995) (stating that "the best interests of this child outweigh the technical violation of appellant's right to due process"), *rev. denied* (Minn. Mar. 29, 1995).

At the time of the district court's order terminating father's parental rights, the children had been out of the home without a permanent placement for more than 500 days.

And in making its decision to allow the TPR hearing to proceed by default, the district court explicitly recognized that the children had been in out-of-home placement for a lengthy time, stating that father was "well aware" of the pending matters in the CHIPS and TPR proceedings and had "multiple opportunities" to appear at hearings and be in contact with the department.[2]  We conclude that the interest of justice would not be served by allowing further delay, and we therefore decline to remand this issue for factual findings and a determination by the district court as to whether service was proper.

## II.     The district court did not err by determining that the department made reasonable efforts to rehabilitate father and reunite him with the children.

Next, father argues that the department failed to provide clear and convincing evidence that it made reasonable efforts to rehabilitate him and reunite him with the children.  Rule 21.03 provides:

> [t]he question of sufficiency of the evidence to support the findings may be raised whether or not the party raising the question has made in the district court an objection to the findings or has made a motion to amend the order.

Minn. R. Juv. Prot. P. 21.03; *see also S.S.W.*, 767 N.W.2d at 733 (stating that when no posttrial motion is made, the scope of our review includes "whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment" (quotation omitted)).  Therefore, a party does not forfeit a challenge to the

---

[2] We note that Minn. R. Juv. Prot. P. 32.03 provides that "[i]t shall be the responsibility of each party to inform the court administrator of any change of address."  Because the parties did not raise the issue to the district court and do not raise it on appeal, we do not consider the effect an interested party's failure to comply with this rule might have on the issues in this appeal.

9

sufficiency of the evidence in a juvenile-protection matter when they do not object or move for amended findings of fact in district court. Minn. R. Juv. Prot. P. 21.03. However, the preferred procedure would have been for father to file a posttrial motion in district court for amended findings pursuant to rule 21.03. *See Bliss v. Bliss*, 493 N.W.2d 583, 589 (Minn. App. 1992) (stating that posttrial motions for amended findings are encouraged even when they are not mandatory).

On appeal from an order terminating parental rights, we "closely inquire into the sufficiency of the evidence to determine whether it was clear and convincing." *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 87 (Minn. App. 2012) (quotation omitted). "Ultimately, however, we review the factual findings for clear error . . . ." *Id.* "A finding is clearly erroneous if it is manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* (quotation omitted). We address father's sufficiency claim with this standard in mind.

A district court may order the termination of parental rights when (1) there is "at least one statutory ground for termination," (2) the "termination is in the best interests of the child," and (3) the department "has made reasonable efforts to reunite the family."[3] *In re Welfare of Child. of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008) (citations omitted). When determining whether the department made reasonable efforts to reunite the family, the district court considers whether services to the family were

> (1) selected in collaboration with the child's family and, if appropriate, the child;

---

[3] Alternatively, a district court may determine that reasonable efforts are not required. Minn. Stat. § 260C.301, subd. 8 (2022).

(2) tailored to the individualized needs of the child and child's family;

(3) relevant to the safety, protection, and well-being of the child;

(4) adequate to meet the individualized needs of the child and family;

(5) culturally appropriate;

(6) available and accessible;

(7) consistent and timely; and

(8) realistic under the circumstances.

Minn. Stat. § 260.012(h) (2022). In making this determination, "the child's best interests, health, and safety must be of paramount concern." Minn. Stat. § 260.012(a).

Father argues that there is little or no evidence in the record that the services provided were culturally appropriate, the case plan was jointly developed with father, the services were provided in a timely manner, or the department provided services to help father secure safe and stable housing. To obtain relief on appeal, a party must show both error and prejudice. *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 237 N.W.2d 76, 78 (Minn. 1975); *In re Welfare of Child. of J.B.*, 698 N.W.2d 160, 166 (Minn. App. 2005) (citing this aspect of *Midway Center* in a child-protection matter).

Contrary to father's assertion, the record here amply supports the district court's determination that the department made reasonable efforts. "What constitutes reasonable efforts depends on the facts of each case." *A.M.C.*, 920 N.W.2d at 663 (quotation omitted). The evidence before the district court demonstrated that the department made reasonable efforts to evaluate father's ability to parent the children and to address his substance use. The department accommodated his frequent moves by offering services outside Minnesota and coordinating remote visitation with the children, but father did not avail himself of

11

these services or meet the reasonable requirements of his case plan. Instead, father evaded the department's continuous efforts to assist him. We therefore conclude that the record contains sufficient evidence that the department made reasonable efforts.

In sum, because father failed to object to the method of service of notice or file a posttrial motion, he forfeited his argument about notice, and because we are not persuaded to review that issue in the interest of justice, we decline to grant relief on that basis. And because the district court's determination that the department made reasonable efforts to rehabilitate father and reunite him with the children is based on clear and convincing evidence in the record, the evidence is sufficient, and we affirm the district court's termination of father's parental rights.

**Affirmed.**