In re the Marriage of Sheila Rose MURRAY, f.k.a. Sheila Rose Antell, petitioner, Respondent,

v.

**Gary Alan ANTELL, Appellant.**

**No. C1-94-954.**

Court of Appeals of Minnesota.

Feb. 5, 1985.

Andrew J. Wambach, Jr., Mahnomen, for Sheila Murray.

Peter W. Cannon, Mahnomen, for Dennis Murray.

David J. Rasmussen, Cass Lake, for appellant.

Robert Remark, Fertile, guardian ad litem.

Heard, considered and decided by FOLEY, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

The father appeals denial of a change of custody. We reverse and remand for reconsideration after an updated custody study.

### FACTS

Sheila and Gary Antell's marriage was dissolved in December 1981. The dissolution decree gave the mother custody of the couple's two children, Timothy, born December 15, 1978, and Jean, born July 1980.

In May 1982, the father reported to the county sheriff's office and welfare department that he suspected physical abuse of Jean. A doctor examined Jean and found several bruises on her bottom. The bruises were consistent with the child having been spanked with a strap or a club.

When Mary Ann Dentz, a county welfare worker, questioned the mother about the bruises, she first said that the child fell down the steps. Later she said that her boyfriend, Dennis Murray, spanked Jean for going into the street. Murray denied spanking the child. The county dropped its investigation of the abuse charges when

the mother surrendered custody of the children to the father three days later.

In January 1983 the mother obtained a court order transfering custody back to her. The father promptly moved for a change of custody. That motion was still pending in late August 1983 when he alleged that Murray, now the mother's husband, sexually abused Jean.

Dentz interviewed the children. Tim indicated verbally and Jean indicated by pointing at diagrams and nodding in response to questions that the stepfather touched Jean's genital or rectal area.

The trial court placed the children in foster care and ordered evaluations by Dr. William Rooney, a psychologist. Dr. Rooney examined the children and all of the adults in September 1983. He made no finding concerning the alleged abuse.

When Jean subsequently became upset at the prospect of a physical examination by a male doctor, the doctor recommended she be evaluated by a psychiatrist. In November 1983 the trial court ordered psychological evaluations of the children by Dr. Clifford Knutson of the Lakeland Mental Health Center.

Knutson and another Lakeland staff member examined the children in February 1984. Knutson found that the children became defensive and withdrew when questioned about the alleged touching incident. Tim finally said that the stepfather had wiped at Jean's "pee-pee." His mother told him his stepfather had done that because Jean did not wipe herself after going to the bathroom. On the basis of the interview and the children's reports to Dentz and their foster mother, Knutson concluded Jean had been sexually abused.

The custody hearing was held in April 1984. The court invited Murray to participate as a party, over the father's objections.

The court permitted Knutson to testify about his examination of the children. However, it refused to admit reports on the mother and stepfather because the Lakeland staff members who prepared them were not present. The court also refused to allow Knutson to testify concerning the reports because he had no part in drafting them.

The excluded reports state that the mother and stepfather believe the children have told stories of sexual abuse at the urging of their father and paternal grandmother. The report on the mother concluded she is defensive and unwilling to consider the possibility that the stepfather may be abusive to the children. Consequently, she could not be expected to protect the children from abuse by him.

Dr. Charles Schroeder, a psychologist testifying for the mother, concluded that Jean had been exposed to some kind of inappropriate or upsetting incident, but that it was not necessarily sexual abuse by the stepfather. He also found that she had been disciplined with excessive force at least once. He recommended leaving the children with the mother and stepfather, but suggested counseling for all of the adults.

### ISSUES

1. Did the trial court err in permitting the stepfather to intervene in custody proceedings?

2. Did the trial court err in excluding psychological reports as hearsay because the parties who prepared them were not called to testify?

3. Does the evidence support the trial court's finding that the stepfather did not abuse the children?

### ANALYSIS

#### I.

The father contends that because the stepfather's only interest in the custody battle was to avoid criminal charges he should not have been permitted to intervene. Intervention under Minn.R.Civ.P. 24.02 is clearly discretionary with the trial court and the trial court will not be reversed unless there is a showing of clear abuse of discretion. *Snyder's Drug*

*Stores, Inc., v. Minnesota State Board of Pharmacy,* 301 Minn. 28, 34, 221 N.W.2d 162, 166 (1974). A court, in the exercise of its inherent power, can permit a party to intervene even if the party has not shown himself or herself entitled to come within the provisions of the rule. *State v. Bentley,* 216 Minn. 146, 157, 12 N.W.2d 347, 354 (1944). The rule does not curtail a court's inherent power to bring before it persons not parties, whenever for complete administration of justice it is necessary to bring them in. *Webster v. Beckman,* 162 Minn. 132, 202 N.W. 482 (1925).

■ The stepfather's interest in protecting himself from criminal charges would not justify intervention. However, it was not an abuse of discretion to include the stepfather in the proceedings. Jurisdiction over him could have been essential to resolving the custody dispute appropriately. By accepting the court's invitation to intervene, the stepfather submitted himself to the jurisdiction of the court. This gave the court the option of ordering him to undergo counseling should the best interests of the children require.

## II.

The father also objects to the trial court's exclusion of reports on the mother and stepfather prepared by staff members of Lakeland Mental Health Center other than Knutson. He contends the reports on the mother and stepfather were admissible as part of a custody report pursuant to Minn.Stat. § 518.167 (1982), or as business records pursuant to Minn.R.Evid. 803(6).

■ The disputed reports concerning the mother and stepfather do not fall under Minn.Stat. § 518.167 because the trial court's November 1983 order only authorized evaluations of the children. However, the trial court erred in not admitting the reports as business records. Knutson's testimony provided the necessary foundation. It is accepted medical practice to use a team approach for psychological evaluations. Knutson testified that the excluded reports were prepared in the regular course of business by qualified personnel

conducting a team evaluation. Therefore, they were admissible as business records pursuant to Minn.R.Evid. 803(6).

## III.

■ The party seeking a change in custody has the burden of proving a significant change of circumstances. *Nice-Petersen v. Nice-Petersen,* 310 N.W.2d 471 (Minn.1981). The purpose of this burden is to introduce a measure of finality and stability to child custody. *See Auge v. Auge,* 334 N.W.2d 393 (Minn.1983).

■ The only change of circumstance which the father alleges is abuse of Jean by the stepfather. The trial court found as a matter of fact that no such abuse occurred. Findings of fact by the trial court shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01.

There is evidence in the record which would support a finding of sexual abuse. However, the trial court's finding that no such abuse occurred is not clearly erroneous. There was no physical evidence of sexual abuse. The only evidence of sexual abuse the court had before it was third-party reports of statements and reactions by the children. Those reports were undercut by several factors.

The foster mother could not remember what the children had told her. The welfare worker could not get Jean to talk, only to point or nod in answer to questions.

The psychologist who examined Jean approximately a month after the alleged incident found she was developing normally and showed no obvious indications of emotional stress other than those which would be expected given her separation from other family members. He also found that Tim's anxiousness to please made him highly suggestible.

The psychiatrist who concluded that Jean had been sexually abused did not examine her until almost five months after the al-

leged incident. He admitted that he had proceeded on the assumption that the allegations of abuse were true. He said he could not get the children to take him into his confidence, that it would take repeated sessions over time to build such trust. He met with the children only once. Cross-examination also brought out the psychiatrist's limited experience in diagnosing sexual abuse, and the possibility of other explanations for the children's conduct.

The evidence may not be conclusive with regard to sexual abuse. However, the trial court's finding is clearly erroneous with respect to physical abuse. Unrebutted testimony by a doctor established that on at least one occasion Jean was disciplined with excessive force. Spanking a two-year-old with a strap or club is clearly inappropriate.

## DECISION

Because of the unrebutted evidence of physical abuse, and the trial court's improper exclusion of relevant evidence, we are compelled to reverse. The record strongly suggests the need for an updated inquiry into the care and treatment of these children. Therefore, we remand to the trial court with instructions to reconsider after updated custody studies are performed by Becker and Mahnomen counties.

Reversed and remanded.