**In the Matter of the CHILD OF Michael SIMON, Parent.**

No. CX–02–2024.

Court of Appeals of Minnesota.

June 3, 2003.

Leonardo Castro, Fourth District Public Defender, David P. Murrin, Assistant Public Defender, Minneapolis, for appellant.

Amy J. Klobuchar, Hennepin County Attorney, Julie K. Harris, Assistant County Attorney, Minneapolis, for respondent Hennepin County Department of Children, Family and Adult Services.

Jonathan G. Steinberg, Minneapolis, for respondent Guardian ad Litem.

Considered and decided by LANSING, Presiding Judge, PETERSON, Judge, and WRIGHT, Judge.

## O P I N I O N

WRIGHT, Judge.

On appeal from an order terminating his parental rights, appellant Michael Simon argues that the district court abused its discretion by (a) admitting letters from his child's therapist under the business-records exception to the hearsay rule and (b) terminating his parental rights because of his imprisonment. We affirm.

## FACTS

In 1997, Michael Simon was adjudicated the father of T.H., born on May 31, 1994. Simon was incarcerated for approximately four years for second-degree burglary beginning in May 1998.

In November 2000, respondent Hennepin County Department of Children, Family and Adult Services (the county) filed a petition in district court, alleging that T.H. was a child in need of protective services. T.H. was subsequently placed in a nonrelative foster home, and in January 2001 adjudicated a child in need of protection and services. In April 2001, the county filed a petition to terminate the parental rights of T.H.'s parents. T.H.'s mother voluntarily consented to termination of her parental rights and consented to T.H.'s adoption by her foster parents in December 2001. The district court stayed its order on this matter for 90 days pending the determination of Simon's parental rights. The district court later terminated the parental rights of T.H.'s mother but determined that the consent to adopt T.H. was not valid unless Simon's rights also were terminated.

Following Simon's release from prison in March 2002, he met with Cliff Robinson, a Hennepin County child-protection social worker, to develop a case plan and set up supervised visits with T.H. Simon understood the requirements of the case plan, which included completion of a psychological evaluation to determine the appropriate services he needed to facilitate his reunification with T.H. The case plan also required Simon to (1) undergo a parenting assessment after his supervised visits with T.H., (2) obtain safe, adequate housing, and (3) participate in parenting-education classes pending the results of the psychological evaluation.

Simon missed his appointment for the psychological evaluation and did not reschedule it. Despite Robinson's efforts to contact Simon by telephone and certified letter, Simon did not complete the evaluation. Simon also did not complete any of the other requirements of the case plan. Simon re-offended in April 2002 and was sentenced to serve five years in prison.

As the social worker assigned to T.H.'s case, Robinson was required to monitor Simon's progress, make referrals, and provide resources as necessary. Robinson was also required to assess T.H.'s well-being. To do so, Robinson maintained ongoing contact with T.H.'s foster family and her therapist, Dr. Julia Davis.

In an April 13, 2002, letter, Davis offered her opinion as to whether the county's suspension of T.H.'s visits with Simon was in T.H.'s best interests. The letter summarized Davis's observations of T.H. during individual-play therapy sessions and a supervised visit with Simon. Davis reported that T.H. was "doing well until notification of her father's reappearance and wish to visit with her." Upon learning of her father's pending visits, T.H. developed symptoms of anxiety. After two supervised visits with Simon, T.H. told Davis that she no longer wished to see him. Based on her observations of T.H. and her knowledge of Simon's failure to attend his psychological evaluation and parenting assessment, Davis supported the county's decision to suspend T.H.'s visits with Simon "until [Simon] has complied with his case

plan and demonstrated a willingness and ability to provide a secure and stable presence in his daughter's life."

At the county's request, Davis wrote another letter dated August 8, 2002, "to update the district court" on her work with T.H., T.H.'s progress in therapy, and Davis's recommendations as to T.H.'s best interests for placement and contact with her biological parents. Davis's letter provides:

I understand that the Court hearing will decide on permanency issues for [T.H.]. As I have recommended before, I believe that her best interests will be served by her continuation in her current foster home, as there is a good chance for placement there. * * * I also understand that [Simon] re-offended and has been returned to prison, and that his rights are considered for termination at this time. In view of [T.H.'s] extreme anxiety in her most recent contacts with her father, her lack of strong attachment to him, and his continued difficulty in maintaining a healthy lifestyle, I strongly recommend no further contact between [T.H.] and her father at this time.

The hearing on the petition to terminate Simon's parental rights was held on August 13, 2002. Simon, Robinson, and the guardian ad litem, Lyndsey Davis, testified. In his testimony, Simon admitted that he did not undergo the psychological evaluation and parenting assessment and explained that he failed to do so because he was depressed after T.H. rejected him during a supervised visit. Simon did not dispute that he failed to comply with the other requirements of the case plan.

During Robinson's testimony, the county offered Davis's April 13 and August 8 letters into evidence under Minn. R. Evid. 803(6), the business-records exception to the hearsay rule. Simon objected, arguing that the letters were not admissible under the business-records exception and, therefore, were inadmissible hearsay. The district court overruled the objection and admitted the letters under the business-records exception. Robinson testified that, in his opinion, termination of Simon's parental rights was in T.H.'s best interests. Robinson's opinion as to T.H.'s best interests was based on his 35 years of experience as a social worker, the knowledge he gained during the two years he was assigned to this case, the eight months he had known Simon, Davis's recommendations, and the ability and willingness of T.H.'s foster parents to adopt T.H.

In its September 12, 2002, order, the district court terminated Simon's parental rights after determining that it is in the best interests of T.H. to do so. In terminating Simon's parental rights to T.H., the district court relied on three statutory criteria, finding that (1) Simon failed to comply with the duties and responsibilities of the parent-child relationship, Minn.Stat. § 260C.301, subd. 1(b)(2) (2002); (2) Simon failed to correct the conditions that led to the out-of-home placement, Minn.Stat. § 260C.301, subd. 1(b)(5); and (3) T.H. is neglected and in foster care, Minn.Stat. § 260C.301, subd. 1(b)(8).

Simon moved for a new trial, alleging that the district court abused its discretion in admitting Davis's letters and other exhibits over Simon's hearsay objections. The district court denied the motion. This appeal followed.

## ISSUES

1. Did the district court properly admit letters from T.H.'s therapist under the business-records exception to the hearsay rule?

2. Did the district court err in terminating Simon's parental rights while he was incarcerated?

## ANALYSIS

### I.

 Simon first argues that the district court abused its discretion by admitting Davis's letters under the business-records exception to the hearsay rule. Absent an erroneous interpretation of the law, whether to admit or exclude evidence is a question within the district court's broad discretion. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45–46 (Minn.1997). A new trial will be granted because of an improper evidentiary ruling only if the complaining party demonstrates prejudicial error. *Id.* at 46.

 Although generally inadmissible, hearsay statements may be admissible under one of several exceptions to the general rule, including the business-records exception. Minn. R. Evid. 802 (general rule); Minn. R. Evid. 803(6) (business-records exception to hearsay rule). Business records are presumed to be reliable because (1) the regularity of the records produces habits of precision in the record keeper, (2) the records are regularly checked, (3) employees are motivated to make accurate records because the businesses that employ them function in reliance on these records, and (4) employees are required to be accurate and risk embarrassment or dismissal if they fail. *In re the Welfare of L.Z.*, 396 N.W.2d 214, 220 (Minn.1986).

 Business records are admissible under the business-records exception if the custodian or another qualified witness can testify that the records were (1) made by a person with personal knowledge of the matters recorded and a business duty to report accurately or from information transmitted by a person with such knowl-

edge, (2) made at or near the time of the recorded event, (3) kept in the course of a regularly conducted business activity, and (4) made as part of the regular practice of that business activity. Minn. R. Evid. 803(6). Even regularly prepared business records are inadmissible, however, when "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.*

 Although Rule 803(6) does not require the custodian of the records to testify, it requires the person attempting to lay foundation to be familiar with how the business in question compiles its documents. *Nat'l Tea Co., Inc. v. Tyler Refrigeration Co. Inc.*, 339 N.W.2d 59, 61 (Minn. 1983) (stating that "[t]he testimony of the custodian or other qualified witness *who can explain the recordkeeping of his organization* is ordinarily essential" (emphasis added) (citation omitted)). In *Murray v. Antell*, 361 N.W.2d 466 (Minn.App.1985), for example, we concluded that reports of abuse prepared by staff members of a mental health center were admissible under the business-records exception, even though the staff members did not testify, where the center's psychologist, who had examined the children reporting the abuse, was qualified to testify that the reports were prepared by qualified personnel conducting a team evaluation. *Id.* at 469. The *Murray* court emphasized that "[i]t is acceptable medical practice to use a team approach for psychological evaluations." *Id.*

Here, the record contains no evidence that Robinson was familiar with how Davis compiled her records or that he participated with Davis in an evaluation of T.H. Robinson, therefore, was not qualified to establish the four foundational requirements of Rule 803(6) for either the April 13 letter or the August 8 letter. *See United States v. Patrick*, 959 F.2d 991, 1001

(D.C.Cir.1992) (holding that sales receipt inadmissible under business-records exception partly because government did not call store employee who could testify that it was store's regular practice to make receipt); *cf. Nat'l Tea,* 339 N.W.2d at 60–62 (concluding that engineer familiar with underwriter's operations and procedures was qualified to lay foundation for admission of underwriter's report). Even if Robinson were qualified to authenticate the letters, his testimony fell far short of what is required to lay the foundational requirements of Rule 803(6). Robinson testified only that he had regular contact with Davis and that she sent him reports about T.H. upon request. He did not provide, and could not have provided, testimony as to three of four foundational elements—that Davis (1) wrote the letters in the regular course of her profession, (2) kept them as part of the routine practice of her work, and (3) prepared them at or near the time of the events.

■ Moreover, even if Robinson had laid the foundation required for admission of the August 8 letter under the business-records exception, it is nevertheless inadmissible because it was prepared in anticipation of litigation. Minn. R. Evid. 803(6) (stating that "[a] memorandum, report, record, or data compilation prepared for litigation is not admissible under this exception."); *see also Palmer v. Hoffman,* 318 U.S. 109, 114, 63 S.Ct. 477, 481, 87 L.Ed. 645 (1943) (concluding that report containing train engineer's account of accident was inadmissible because primary utility of report was in litigating, not in railroading); *Brown v. St. Paul Ry. Co.,* 241 Minn. 15, 36, 62 N.W.2d 688, 701–02 (1954) (concluding that report prepared pursuant to an established business routine was admissible under business-records exception where report had many uses besides litigation). In determining whether

a document was prepared for litigation, a district court must consider when and by whom the report was made and the purpose of the report. *Nat'l Tea,* 339 N.W.2d at 62.

Davis wrote the August 8 letter expressly to update *the court* on T.H.'s progress in therapy and to offer her recommendation for T.H.'s placement. Davis noted her understanding that the district court would be making a decision on permanency issues. Thus, she clearly prepared the second letter in anticipation of litigation, and the district court abused its discretion in admitting the letter.

■ Finally, Davis's August 8 letter was inadmissible because it contained her opinion on an ultimate issue, namely, whether further contact between Simon and T.H. was in T.H.'s best interests. Business records qualify for admission under the business-records exception even if they include opinions or diagnoses. Minn. R. Evid. 803(6); *see Brown,* 241 Minn. at 26, 62 N.W.2d at 696 (concluding that properly identified hospital records admissible to prove matters related to patient's hospitalization and treatment but hearsay and self-serving statements contained in records not admissible to prove how injury occurred); *see also Lindstrom v. Yellow Taxi Co.,* 298 Minn. 224, 232–33, 214 N.W.2d 672, 678–79 (1974) (concluding that hospital records admissible). But a business record containing an opinion on an ultimate issue is admissible only if the witness offering the opinion is available to permit the fact-finder to test the weight and credibility of the opinion through cross-examination. *See Barnes v. Northwest Airlines, Inc.,* 233 Minn. 410, 433, 47 N.W.2d 180, 193 (1951) (concluding that report of plane-crash investigation containing expression of opinion inadmissible under public-records exception to hearsay rule "not on the ground that it was not

properly certified or exemplified, but upon the more serious ground that * * * [d]efendant had no opportunity to cross-examine with reference to the report nor anyone making it"); *see also Skogen v. Dow Chem. Co.,* 375 F.2d 692, 704–05 (8th Cir. 1967) (concluding that opinion contained in hospital record inadmissible under business-records exception because, among other things, admission would deny defendant opportunity to cross-examine).

Although the district court abused its discretion in admitting Davis's letters under the business-records exception, we conclude that the error was harmless because the record contains evidence, other than the observations and opinion of Davis, that is independently sufficient to support the district court's decision to terminate Simon's parental rights. *In re Welfare of S.R.A.,* 527 N.W.2d 835, 838 (Minn.App. 1995) (concluding that admission of evidence in termination-of-parental-rights proceeding was harmless error), *review denied* (Minn. Mar. 29, 1995).

## II.

Simon next argues that the district court committed reversible error when it terminated his parental rights while he was incarcerated. The district court may terminate parental rights if clear and convincing evidence establishes that at least one statutory basis for termination exists and termination is in the best interests of the child. Minn.Stat. § 260C.317, subd. 1 (2002); *In re Welfare of L.A.F.,* 554 N.W.2d 393, 396–97 (Minn. 1996); *see also* Minn.Stat. § 260C.310, subd. 1(b) (2002) (providing statutory grounds for termination). We review a termination of parental rights to determine "whether the district court's findings address the statutory criteria and whether those findings are supported by substantial evidence and are not clearly erroneous."

*In re Welfare of P.R.L.,* 622 N.W.2d 538, 543 (Minn.2001) (citation omitted). We examine the record "to determine whether the evidence is clear and convincing." *Id.* (citing *In re Welfare of Clausen,* 289 N.W.2d 153, 156 (Minn.1980)). Parental rights may be terminated only for grave and weighty reasons. *In re Welfare of M.D.O.,* 462 N.W.2d 370, 375 (Minn.1990). In a termination-of-parental-rights proceeding, the best interests of the child are paramount. Minn.Stat. § 260C.301, subd. 7 (2002).

Although a parent's incarceration alone is not enough to warrant termination of parental rights, the district court may consider the fact of incarceration in conjunction with other evidence supporting the petition for termination. *See In re Welfare of A.Y.-J.,* 558 N.W.2d 757, 761 (Minn.App.1997) (concluding that no error committed in considering father's incarceration, limited contact with son, and failure to cooperate with social workers), *review denied* (Minn. Apr. 15, 1997); *see also In re Welfare of Staat,* 287 Minn. 501, 506–07, 178 N.W.2d 709, 713 (1970) (considering relationship prior to father's incarceration and father's desire and ability to continue relationship); *In re Welfare of Udstuen,* 349 N.W.2d 300, 304 (Minn.App.1984) (considering child's special needs, foster mother's ability to care for child, and father's indifference). Contrary to Simon's argument, there is no prohibition against terminating parental rights while the parent is in prison.

In terminating Simon's parental rights to T.H., the district court relied on three statutory criteria, finding that (1) Simon has failed to comply with the duties and responsibilities of the parent-child relationship, Minn.Stat. § 260C.301, subd. 1(b)(2) (2002); (2) Simon has failed to correct the conditions that led to T.H.'s out-of-home placement, Minn.Stat. § 260C.301, subd.

1(b)(5); and (3) T.H. is neglected and in foster care, Minn.Stat. § 260C.301, subd. 1(b)(8). Substantial evidence in the record supports these findings.

■ The district court may terminate parental rights if it finds

that the parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon that parent by the parent and child relationship.

Minn.Stat. § 260C.301, subd. 1(b)(2). Simon's failure to satisfy key elements of the court-ordered case plan provides ample evidence of his lack of compliance with the duties and responsibilities of the parent-child relationship. Evidence that Simon never underwent a psychological evaluation or parenting assessment is uncontroverted. Even after his incarceration, Simon could have completed the psychological evaluation. But he failed to do so. Likewise, the district court correctly concluded that Simon has "failed to provide any meaningful parenting to T.H." and has "offered no evidence that he possess[es] the skills and knowledge" to parent T.H. effectively. The district court's finding that Simon has neglected his parenting duties and responsibilities is supported by substantial evidence and, therefore, is not clearly erroneous.

■ The record also establishes that, notwithstanding the county's reasonable efforts to help Simon correct the conditions leading to T.H.'s out-of-home placement, Simon has failed to do so. As to this statutory criterion, Minn.Stat. § 260C.301, subd. 1(b)(5), the uncontested evidence establishes that, when he was not incarcerated, Simon failed to provide a stable home for T.H. and, within two months of his release from prison, he engaged in criminal activity that will preclude him from doing so for five additional years. That Simon re-offended only two months after

his release from prison shows that he did not correct the conditions leading to T.H.'s placement out of the home. Rather, the conditions remained virtually unchanged. Thus, the district court's findings under this statutory criterion are supported by substantial evidence and are not clearly erroneous.

■ Parental rights may be terminated if the district court finds "that the child is neglected and in foster care." Minn. Stat. § 260C.301, subd. 1(b)(8).

"Neglected and in foster care" means a child

(a) [w]ho has been placed in foster care by court order; and

(b) [w]hose parents' circumstances, condition, or conduct are such that the child cannot be returned to them; and

(c) [w]hose parents, despite the availability of needed rehabilitative services, have failed to make reasonable efforts to adjust their circumstances, condition or conduct, or have willfully failed to meet reasonable expectations with regard to visiting the child or providing financial support for the child.

Minn.Stat. § 260C.007, subd. 24 (2002). From our review of the record, it is clear that each element of this statutory criterion is met. Likewise, the record establishes that T.H. has been in a "stable and secure" foster home for the past 17 months, and T.H. cannot live with Simon for the next several years. Substantial evidence supports the district court's finding that T.H. is neglected and in foster care.

■ Finally, in reviewing the district court's conclusion that termination of Simon's parental rights is in the best interests of T.H., we consider (1) the child's interests in maintaining the parent-child relationship, (2) the parent's interests in maintaining the parent-child relationship,

and (3) any competing interests of the child. *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn.App.1992).

The district court reasoned that termination of Simon's parental rights is in T.H.'s best interests, because (1) Simon has never demonstrated that he is capable of parenting his daughter, (2) T.H. has been in an out-of-home placement for approximately two years, and (3) Simon has continued his criminal behavior and has been unable to maintain himself in the community. In addition, the district court found, based on the testimony of the guardian ad litem, that T.H. "has no meaningful relationship with her father, * * * and does not desire to have contact or reside with her father."

Contrary to Simon's claims, the district court considered other probative factors in addition to Simon's incarceration during most of his daughter's life. The district court made detailed and thorough findings regarding Simon's conduct and T.H.'s needs, which are supported by substantial evidence. Accordingly, we conclude that the district court did not err in finding termination of Simon's parental rights to be in the best interests of T.H.

## D E C I S I O N

The district court abused its discretion in admitting two letters from T.H.'s therapist into evidence under the business-records exception to the hearsay rule, Minn. R. Evid. 803(6), without the proper foundation to establish their trustworthiness. The August 8, 2002, letter was inadmissible for two additional reasons. First, the letter was written in anticipation of litigation. Second, it contained an opinion on the ultimate issue rendered by a witness who was not available for cross-examination. But the error was harmless because, even without consideration of the letters, the district court's findings are supported

by substantial evidence, and the record establishes that termination of Simon's parental rights is in T.H.'s best interests.

**Affirmed.**

LANSING, Judge (concurring).

The evidence clearly and convincingly establishes three statutory reasons for termination: (1) failure to comply with the duties and responsibilities of the parent-child relationship, (2) failure to correct conditions that led to the child's out-of-home placement, and (3) neglect and continued placement in foster care. To prove that termination was in the child's best interests, the state presented testimony from a child-protection social worker and the guardian ad litem.

In the course of the social worker's testimony the state introduced nine exhibits, two of which were letters from the child's therapist. According to the trial transcript, the purpose of those letters was to show that the therapist was recommending continued therapy for the child. Appellant objected on hearsay grounds, and the county contended that the letters were admissible under the business-records exception to the hearsay rule. The court permitted the county to establish foundation through the social worker's testimony that it was a business record of the county. No one suggested that the preparation of the letters was untrustworthy. In fact, the appellant has not challenged the foundation.

I agree with the majority's conclusion that the letters were not prejudicial to the court's decision to terminate parental rights. The letters were not referred to in closing argument except in a general reference to the nine exhibits, and the letters did not form a basis for any of the court's findings of fact or conclusions of law. But I do not agree that the letters are inadmis-

sible because they lack proper foundation, were prepared in anticipation of litigation, or address the ultimate issue. For the limited purpose for which the letters were admitted their admission was not an abuse of discretion.

I concur in the majority's determination that the record establishes clear and convincing evidence for termination of parental rights on three separate statutory grounds.