*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1303**

State of Minnesota,
Respondent,

vs.

Patricia Ann Shepard,
Appellant.

**Filed August 15, 2016
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-14-667

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Erica Shiff Glassberg, Bloomington City Attorney, Torrie J. Schneider, Assistant City Attorney, Bloomington, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

    Considered and decided by Reilly, Presiding Judge; Smith, Tracy M., Judge; and

Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellant challenges her misdemeanor trespass conviction on the grounds that (1) the evidence was not sufficient to support the conviction; (2) the district court erred by admitting evidence over appellant's hearsay objections; and (3) appellant was denied her constitutional right to confront witnesses against her. We affirm.

## FACTS

Appellant Patricia Ann Shepard was convicted of trespass stemming from events that occurred on December 31, 2013, in conjunction with a proposed Idle No More demonstration at the Mall of America (MOA). Idle No More is a Canadian-based movement protesting against the Canadian government's abrogation of treaty rights. A number of groups in the United States formed Idle No More groups in solidarity with the Canadian movement, and appellant facilitates and promotes some of a local group's activities in conjunction with Idle No More.

In December 2012, approximately 1,000 people gathered at MOA as part of an Idle No More demonstration. Idle No More organizers did not seek authorization for the event. MOA informed the Idle No More promoters and attendees, including appellant, that the event was unauthorized. In December 2013, MOA learned that Idle No More intended to gather at the mall on New Year's Eve. Idle No More posted the event on social media and invited over 12,000 people to attend. Appellant also personally promoted the December 2013 event on social media platforms. Concerned about the size of the demonstration and the potential to disrupt mall operations during a holiday, MOA informed the event

2

organizers that the event was not authorized. MOA identified appellant as one of the organizers and sent her a letter stating:

> It has come to our attention that your group is planning a political protest at [MOA] in connection with Idle No More . . . .
>
> Any attempt by your group to conduct a protest is a violation of MOA policies and will subject your group to removal from MOA property, and potential arrest by the City of Bloomington police department.

The letter was signed by MOA's Management Team.[1]

MOA developed a plan to respond to the event, enact crowd-control measures, and communicate that the event was unauthorized. On December 31, MOA Director of Security Douglas Reynolds informed MOA Security Department personnel that Idle No More organizers, including appellant, were not allowed at the mall. In the event the organizers came onto the property, MOA personnel intended to first ask them to leave and, if they refused, to issue trespass notices to them and ask them not to return for a designated period of time. MOA posted signs at the entrances stating that demonstrations and protests were not permitted and searched large bags and purses to ensure that people were not bringing in anything that could be used as part of the demonstration. The Bloomington Police Department also formulated a plan to respond to the protest and stationed uniformed police officers at MOA to assist MOA's Security Department.

---

[1] The members of MOA's Management Team are undefined but include MOA security personnel Douglas Reynolds and William Bernhjelm.

3

On December 31, appellant participated in a press conference on a public sidewalk outside the mall and announced that she intended to go into the mall to discuss the event with MOA management. Appellant entered MOA and began walking toward the rotunda, where the event was originally scheduled to take place. Appellant was accompanied by family members and community members, including a man holding a drum. Appellant was carrying gifts to deliver to management personnel in an effort to reconcile the disagreement.

Appellant approached Bloomington Police Sergeant James Ousley and asked him for directions to MOA's management office. Sergeant Ousley told appellant that a member of MOA management wanted to speak to her and escorted her to MOA Security Captain William Bernhjelm. Appellant told Bernhjelm that she wanted to speak with someone from MOA management, and Bernhjelm confirmed that he was part of MOA's Management Team. Bernhjelm asked appellant to leave MOA due to her participation in organizing the Idle No More demonstration. Appellant made no attempt to leave and stated that she had a legal right to be on the property. Bernhjelm asked appellant to leave three more times, and appellant refused each time. Bernhjelm asked appellant to confirm her refusal to leave, and appellant confirmed that she would not leave the property. After Bernhjelm asked appellant to leave four times and she refused each time, Bernhjelm, with the assistance of Sergeant Ousley, arrested appellant for trespass.

The state filed a citation with the district court charging appellant with trespassing on the premises of another and refusing to depart, in violation of Minn. Stat. § 609.605, subd. 1(b)(3) (2013). Appellant pleaded not guilty, and the matter proceeded to trial. The

jury found appellant guilty of the charged offense, and the district court imposed a 30-day stayed sentence. This appeal follows.

# DECISION

## I.

Appellant first challenges the sufficiency of the evidence supporting her conviction. Our review of a sufficiency-of-the-evidence challenge is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. DeRosier*, 695 N.W.2d 97, 108 (Minn. 2005) (quotation omitted). We assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). Inconsistencies in testimony go to witness credibility, which is an issue for the fact-finder. *See State v. Pendleton*, 706 N.W.2d 500, 512 (Minn. 2005).

The state charged appellant with trespassing on the premises of another and refusing to depart. A person is guilty of this offense if she intentionally "trespasses on the premises of another and, without claim of right, refuses to depart from the premises on demand of the lawful possessor." Minn. Stat. § 609.605, subd. 1(b)(3). A defendant's lack of a claim of right is a basic element in a criminal trespass case that the state must prove beyond a reasonable doubt. *State v. Brechon*, 352 N.W.2d 745, 750 (Minn. 1984) ("[I]n a criminal trespass case the state must present evidence from which it is reasonable to infer that the defendant has no legal claim of right to be on the premises where the trespass is alleged to have occurred."). The state's evidence "normally would be in the realm of property law,

5

such as that the title or right of possession is in a third party and that no title or permission has been given to defendant, or if given has been withdrawn." *Id.* The evidence presented by the state "should be of such a nature as to permit a reasonable inference that there could be no claim of right by defendant." *Id.* Once the state presents evidence that the defendant has no claim of right to the property, the burden shifts to the defendant to "offer evidence of [her] reasonable belief that [s]he has a property right, such as that of an owner, tenant, lessee, licensee or invitee." *Id.* However, "[s]ubjective reasons not related to a claimed property right or permission are irrelevant and immaterial to the issue of claim of right." *Id.* It is for the jury to determine whether the defendant's evidence is sufficient to establish a claim of right. *Id.*

Appellant argues that she had a good-faith reasonable belief that she was permitted to enter MOA to meet with MOA management as an invitee, provided she did not participate in an unauthorized event while on the property or act in disregard of MOA's rules of conduct. Appellant claims that because the state failed to provide evidence disproving appellant's good-faith reasonable belief, it did not meet its burden of proof under *Brechon* and this court must reverse the conviction. In response, the state asserts that criminal charges only attached when appellant refused to leave after an MOA security officer instructed her to do so. The state argues that the proper inquiry is whether appellant had a good-faith reasonable belief that she had a claim of right to remain at MOA after Bernhjelm repeatedly asked her to leave.

Our analysis is controlled by *State v. Wicklund*, 589 N.W.2d 793 (Minn. 1999). In that case, defendants staged an anti-fur protest at MOA adjacent to a department store and

attempted to engage passersby in the protest. *Wicklund*, 589 N.W.2d at 794-95. The protest was "at all times peaceful and nonconfrontational." *Id.* at 795. MOA security personnel warned the protestors several times that they were on private property and would be arrested if they did not leave the mall. *Id.* Four defendants refused to leave and were arrested and charged with misdemeanor trespass under Minn. Stat. § 609.065, subd. 1(b)(3). *Id.* The *Wicklund* defendants sought dismissal of the charges, asserting that they had a claim of right under *Brechon* which precluded the state from proving trespass charges and asserting freedom-of-speech arguments. *Id.* The district court held that MOA was public property because the public was generally invited onto the property and public financing was leveraged in MOA's development. *Id.* at 796. This court reversed on appeal and concluded that constitutional free-speech protections did not apply to defendants' conduct at the privately owned MOA. *Id.* at 797. The Minnesota Supreme Court affirmed our decision on appeal. *Id.* at 803.

Appellant cites *Wicklund* for the proposition that "individuals would only be asked to leave for protesting or otherwise violating the Mall of America code of conduct." Appellant argues that "*Wicklund* would not support a finding that an individual who enters the Mall in order to seek out management and discuss the nature of an event . . . , without any violation of the Mall code of conduct, is entering the Mall without a claim of right." Appellant urges this court to adopt an interpretation of *Wicklund* that "protestors lose their claim of right only when they protest, are advised that their protest is unauthorized and must stop, and choose to continue protesting anyway." However, *Wicklund* does not create such a test, and we decline to read *Wicklund* as restrictively as appellant suggests. *See*

*Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) ("The function of the court of appeals [as an error-correcting court] is limited to identifying errors and then correcting them.").

Appellant also contends that the current case is factually distinguishable from *Wicklund* because the Bloomington Police Department had a stronger presence at MOA during appellant's arrest. Appellant argues that the stronger police presence "indicates an ongoing symbiotic relationship between the Mall and the City of Bloomington police," which is prohibited under *Wicklund*. The record reflects that Bloomington police officers were present at MOA on December 31 to provide extra assistance in case the demonstration took place. The *Wicklund* court reasoned that facts constituting a symbiosis "must indeed convince us that the 'power, property, and prestige' of the state has been in fact placed behind the [complained-of] conduct." 589 N.W.2d at 802 (emphasis omitted) (quoting *Brennan v. Minneapolis Soc'y for the Blind, Inc.*, 282 N.W.2d 515, 528 (Minn. 1979) (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S. Ct. 856, 862 (1961))). In a footnote to the case, the Minnesota Supreme Court noted that the presence of a police substation in a mall and the presence of police officers in a mall during business hours would not "rise to the level that the power, property and prestige of the state would implicate the state as the responsible actor." *Id.* at 802 n.8.

The undisputed testimony reflects that MOA security personnel asked appellant to leave MOA multiple times, and she refused. From her own testimony, appellant understood that she was being asked to leave, but she did not want to go. The state presented sufficient evidence from which it is reasonable to infer that appellant had no

8

claim of right to remain at MOA under *Wicklund*. Because the state presented evidence sustaining its burden of proof that appellant had no claim of right to be in MOA after she was asked to leave, the burden shifted to appellant to show evidence of her "reasonable belief" that she had a property right in MOA as "owner, tenant, lessee, licensee or invitee." *See Brechon*, 352 N.W.2d at 750. The record shows that MOA security personnel asked appellant to leave four times, and she understood that she was being asked to go. The jury could determine that, at that point, appellant could not have nurtured a reasonable belief that she had a property right in MOA as an invitee.

Upon review, we view the evidence in the light most favorable to the jury's verdict, and we assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Doppler*, 590 N.W.2d 627, 635 (Minn. 1999). The jury heard evidence from MOA security officers, Bloomington police officers, and appellant, evaluated the credibility of these witnesses, viewed MOA videotape of the interaction, and ultimately concluded that the state proved its case. When viewed in the light most favorable to the jury's verdict, the evidence in the record was sufficient to support the jury's verdict that appellant trespassed at MOA without a claim of right.

**II.**

Appellant next argues that the district court erred, in violation of the hearsay rules, by allowing the state to introduce testimony and evidence that MOA's owners delegated lawful possession of the property to MOA managerial employees. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, Minn. R. Evid. 801(c), and is generally not admissible at trial, Minn. R. Evid. 802. "When the admissibility of

9

evidence is challenged on appeal, [appellate courts] defer to the district court's exercise of discretion in the conduct of the trial, and [appellate courts] will not lightly overturn a district court's evidentiary ruling." *State v. MacLennan*, 702 N.W.2d 219, 235 (Minn. 2005). "If testimony was erroneously admitted, [appellate courts] review for harmless error." *State v. Yang*, 774 N.W.2d 539, 554 (Minn. 2009). The appellant must show that the admission of evidence was erroneous and that she was prejudiced as a result. *Holt v. State*, 772 N.W.2d 470, 483 (Minn. 2009).

## A.

We first consider whether the district court erred in admitting the evidence. Appellant objected on hearsay grounds to the admission of two pieces of evidence: (1) a letter signed by MOA Vice President of Operations Rich Hoge delegating lawful possession of MOA to MOA's security team; and (2) testimony from MOA's legal counsel, Kathleen Allen, that MOA's owners delegated lawful possession rights to Hoge. Appellant argues that because neither MOA's owners nor Hoge testified at trial, any evidence purporting to show the chain of lawful possession of MOA to MOA security violated the hearsay rules.

MOA is a privately owned business. The property owners are not on-site on a daily basis. The state introduced a May 2013 letter as evidence of the delegation of the lawful-possessor title. The letter is signed by Hoge and states in relevant part:

> I confirm that Mall of America Security is a lawful possessor of the property on behalf of the owner, and charged with administering the rules of conduct and trespass protocols governing Mall of America. In addition, I confirm that Mall of America security officers act on behalf of the owner to control

10

> access to the property and are employed directly by the owner, and not any separate entity.

The district court admitted the letter into evidence over appellant's objection.

The state argued the letter was admissible under the business records exception to the hearsay rule because it was drafted by MOA's corporate counsel and kept in the ordinary course of business to memorialize a standard business practice. *See* Minn. R. Evid. 803(6) (providing that certain records may be admissible under the business records exception to the hearsay rule "if kept in the course of a regularly conducted business activity"). A party seeking to have a document admitted as a business record must present testimony establishing that

> the record[] w[as] (1) made by a person with personal knowledge of the matters recorded and a business duty to report accurately or from information transmitted by a person with such knowledge, (2) made at or near the time of the recorded event, (3) kept in the course of a regularly conducted business activity, and (4) made as part of the regular practice of that business activity.

*In re Child of Simon*, 662 N.W.2d 155, 160 (Minn. App. 2003). A qualified witness must lay the foundation for rule 803(6) evidence. Minn. R. Evid. 803(6).

The rule 803(6) criteria are not satisfied here. In order to lay the foundation for the business records exception, a qualified witness must testify that the business record was kept in the regular course of business and that it was the regular practice of the business to keep such a record. *Nat'l Tea Co. v. Tyler Refrigeration Co.*, 339 N.W.2d 59, 61 (Minn. 1983). The witness must be familiar with how the record is kept. *See id*. at 61–62. MOA legal counsel Allen testified that she authored the letter and asked Hoge to sign it. Allen

11

stated that the letter was prepared independently of the December 31 incident and was not related to appellant's arrest.

However, Allen conceded that the letter was written specifically with a view toward future litigation. A document created in anticipation of litigation is not admissible under the business records exception. *Simon*, 662 N.W.2d at 161. Here, Allen testified that "[a]s part of trespass cases in the City of Bloomington they needed confirmation and it had been requested by one of the judges. So we actually provided confirmation that we had been given authority by the ownership to enforce the trespass policies for [MOA]." Because the May 2013 letter was prepared in anticipation of litigation and not as part of the "regular practice" of MOA's business activity, we determine that the letter was not admissible as a business record. *See* Minn. R. Evid. 803(6) ("A memorandum, report, record, or data compilation prepared for litigation is not admissible under this exception.").

We further determine that Allen's testimony regarding the delegation of the lawful-possessor title from MOA's owners to MOA management personnel did not fall within any of the exceptions to the hearsay rule. *See* Minn. R. Evid. 803 (listing 22 exceptions to hearsay exclusion), 804 (listing four exceptions to hearsay exclusion), 807 (stating residual exception to hearsay exclusion). Allen testified that MOA's owners designated Hoge and Reynolds to act as lawful possessors of the property. And although the state argued that Allen had firsthand knowledge of the delegation of the lawful-possessor title, based upon her personal discussions with MOA's owners, Allen's testimony on this point was hearsay (what MOA's owners told her) and was offered to prove the truth of the matter asserted, specifically, that MOA's owners delegated their lawful-possessor interest to Hoge and

12

Reynolds. Such testimony was not admissible under the exceptions to the hearsay rule. *See* Minn. R. Evid. 801(c), 802.

**B.**

Having determined that the evidence was erroneously admitted, we next turn to a consideration of whether the error was harmless. *See Yang*, 774 N.W.2d at 554 (applying harmless error standard). Under the harmless error standard, "[i]f no constitutional right was implicated, [appellate courts] will reverse only if the district court's error substantially influenced the jury's decision." *State v. Vang*, 774 N.W.2d 566, 576 (Minn. 2009) (quotation omitted). Appellate courts look to the following factors when determining whether testimony significantly affected a verdict: "(1) the manner in which the State presented the testimony; (2) whether the testimony was highly persuasive; (3) whether the State used the testimony in closing argument; and (4) whether the defense effectively countered the testimony." *State v. Peltier*, 874 N.W.2d 792, 802 (Minn. 2016). Appellant bears the burden of demonstrating prejudice. *Id*.

The manner in which the state presented the evidence did not create a reasonable likelihood that the admission of the testimony substantially affected the verdict. The state presented evidence of MOA's delegation through Allen, but such testimony was brief. The state asked Allen only a few questions on this issue during its direct examination. Appellant had ample opportunity to challenge the contested testimony during Allen's cross-examination related to the delegation of lawful possession, and Allen briefly expanded her testimony on this point. In all, however, Allen's testimony on the disputed evidence was limited and covered only about 5 pages of her nearly 80-page testimony.

13

This factor weighs in favor of a conclusion that the error did not significantly affect the verdict.

Moreover, Allen was one of only several witnesses who testified regarding lawful possession. Two additional witnesses, Bernhjelm and Reynolds, testified that they had personal knowledge of the delegation of authority. During cross-examination, Bernhjelm confirmed that he "personally [had] authority over the property." Additionally, Reynolds testified that he had personal knowledge that MOA's property owners had designated Hoge to act as lawful possessor of the property on their behalf and, "[b]ased on conversations we've had," confirmed that MOA's Security Department administered the rules of conduct and trespass protocols for the mall. Appellant did not object to this testimony. In light of Bernhjelm and Reynold's unobjected-to testimony and appellant's own admissions, Allen's testimony was not highly persuasive on the issue of appellant's guilt.

Under the third factor, the state's use of the contested evidence in closing argument was extremely limited. In closing, the prosecutor stated:

> The evidence that you heard in this case and that you saw through [the May 2013 letter] in this case, was that the Mall of America[] owners gave Mr. Hoge the authority to demand that people leave the property. Mr. Hoge also was allowed to delegate this authority and he did delegate this authority to Mall Security, which includes Will Bernhjelm.
>
> . . . .
>
> You heard from the Mall of America's own attorney, who is an officer of the Court, that the Mall Security was the lawful possessor to act on behalf of the owners of the Mall, so there was evidence presented about that, including testimony from the Mall's own attorney.

14

The prosecutor did not discuss lawful possession during opening statements, and the references to this evidence during closing argument were brief and comprised a few sentences in a nearly 15-page closing argument. *See State v. Matthews*, 800 N.W.2d 629, 635 (Minn. 2011) (determining error was harmless where prosecutor's discussion of contested evidence was limited to three sentences in 18-page closing argument). This factor weighs in favor of a harmless error conclusion.

Finally, appellant effectively countered the disputed evidence both during Allen's cross-examination and in closing argument. Specifically, appellant's counsel argued in closing that MOA's owners were not called to testify at trial and that Allen's testimony was "second-hand." Appellant countered the state's evidence, thereby lessening the likelihood that the contested evidence significantly affected the jury's verdict.

Having reviewed the record in light of the four factors set forth in *Peltier*, 874 N.W.2d at 802, we conclude that there is no reasonable likelihood that admitting the contested testimony and evidence significantly affected the verdict in this case. Consequently, appellant is not entitled to a new trial based on the district court's admission of the May 2013 letter and Allen's testimony.

### III.

Finally, appellant contends that she was denied a fair trial because the district court admitted evidence of MOA's delegation of lawful possession through the May 2013 letter, depriving her of the constitutional right to confront the witnesses against her. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The Confrontation Clause "prohibits

15

'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *State v. Warsame*, 735 N.W.2d 684, 689 (Minn. 2007) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004)). Whether the admission of evidence violates a defendant's confrontation right is a question of law reviewed de novo. *Id.*

To determine whether a statement is admissible, we first consider whether the statement is testimonial in nature. *See Davis v. Washington*, 547 U.S. 813, 840, 126 S. Ct. 2266, 2284 (2006). Whether a statement is testimonial depends upon the primary purpose or reason for the statement. *See id*. at 822, 126 S. Ct. at 2273-74. If the primary purpose is to "establish or prove past events" for purposes of later criminal prosecution, the statement is considered testimonial. *Id*. We determine that the May 2013 letter was testimonial in nature because it was a formal statement prepared for litigation purposes.

Our conclusion that the May 2013 letter is testimonial does not end our inquiry. Violations of the Confrontation Clause are subject to a harmless error analysis, and "reversal is not required if the error was harmless beyond a reasonable doubt." *State v. Swaney*, 787 N.W.2d 541, 555 (Minn. 2010).

> In order to deem a Confrontation Clause error harmless beyond a reasonable doubt, we must determine that the guilty verdict actually rendered was surely unattributable to the error. When determining whether the jury's verdict was surely unattributable to an error, we examine the record as a whole. In doing so, we consider the manner in which the evidence was presented, whether the evidence was highly persuasive, whether it was used in closing argument, and whether it was effectively countered by the defense.

16

*State v. Wright*, 726 N.W.2d 464, 476 (Minn. 2007) (quotations omitted).  The strength of other evidence of the defendant's guilt is also an important factor.  *Hawes v. State*, 826 N.W.2d 775, 786 (Minn. 2013).

First, we consider the manner in which the evidence was presented.  The May 2013 letter was presented through Allen's testimony.  However, references to the letter were limited to only a few pages in the trial transcript and did not represent a substantial portion of her testimony.  This factor weighs in favor of a harmless error conclusion.

The second factor requires us to consider whether the evidence was highly persuasive.  As discussed above, Allen's testimony was not the sole evidence regarding lawful possession of MOA.  Bernhjelm testified on cross-examination that he had personal authority over the property, and Reynolds testified that he had personal knowledge that Hoge and MOA's Security Department were designated to act as lawful possessors of the property.  Appellant either elicited, or did not object to, Bernhjelm and Reynold's testimony.

Third, the state's reference to the May 2013 letter in closing argument was brief.  The prosecutor stated: "The evidence that you heard in this case and that you saw through [the May 2013 letter] in this case, was that [MOA's owners] gave Mr. Hoge the authority to demand that people leave the property."  Although the prosecutor referenced the May 2013 letter in its closing, the reference was cursory, and the state did not emphasize or dwell on the contested evidence in closing.

The fourth factor considers whether the defense effectively countered the evidence. The record shows that appellant countered the evidence during Allen's cross-examination. Appellant asked Allen approximately 15 questions related to the drafting and signing of the letter and questioned her at length about Hoge's involvement in reading and signing the letter. Appellant also effectively countered the evidence during closing argument. Appellant spent nearly 2 pages of her 15-page closing argument attempting to discredit the May 2013 letter, and referring to it as "second and third-hand claims based on what other people said or what other people are heard to have said." This factor also weighs in favor of a harmless error conclusion.

And, as noted above, other evidence establishes appellant's guilt. We therefore conclude that the district court did not err in admitting the evidence, and appellant is not entitled to a new trial.

**Affirmed.**