*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-0362**


In the Matter of the Welfare of the Children of:
P. L. G., Parent.


**Filed August 29, 2016**
**Affirmed**
**Klaphake, Judge**[*]

Hennepin County District Court
File No. 27-JV-15-4288


Mary F. Moriarty, Hennepin County Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, Minnesota (for appellant P.L.G.)

Michael O. Freeman, Hennepin County Attorney, Michelle A. Hatcher, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Human Services and Public Health Department)

Alex Brusilovsky, Eden Prairie, Minnesota (for guardian ad litem Jesse Mongrue)


Considered and decided by Bjorkman, Presiding Judge; Reilly, Judge; and Klaphake, Judge.

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**KLAPHAKE**, Judge

Appellant-mother P.L.G. challenges the termination of her parental rights to her children, B.C.D.G. and T.L.T.[1]  The district court terminated parental rights on four statutory grounds: failure to comply with parental duties; palpable unfitness; failure of reasonable county efforts to correct the conditions leading to out-of-home placement; and children remaining neglected and in foster care.  Minn. Stat. § 260C.301, subds. 1(b)(2), (4), (5), (8) (2014).  Appellant challenges the district court's decision on all of the statutory grounds, and argues that termination was not in the children's best interests, and the district court erred in admitting five hearsay exhibits as evidence.  We affirm.

## D E C I S I O N

A district court's decision to terminate parental rights must be supported by one of the statutory grounds listed in Minn. Stat. § 260C.301, subd. 1(b).  Whether to terminate parental rights is "discretionary with the district court." *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 136 (Minn. 2014).  We will affirm a district court's termination if at least one statutory basis is proven by clear and convincing evidence and termination is in the children's best interests. *In re Welfare of Children of J.R.B.,* 805 N.W.2d 895, 899-902 (Minn. App. 2011), *review denied* (Minn. Jan. 6, 2012).

---

[1] P.L.G. transferred legal custody of a third child, M.W., to his father prior to trial; M.W. was removed from the termination petition.

**I.     The district court did not abuse its discretion in terminating P.L.G.'s parental rights because she is palpably unfit to parent.**

P.L.G. challenges the district court's finding that she is palpably unfit to parent. She maintains that, at the time of the termination hearing, she was able to ensure that her children attended school on time and she had learned to manage their asthma. She also disputes the district court's reference to her mental health as grounds for termination as it was not initially alleged by the county in its petition requesting that the children be adjudicated in need of protection or services (CHIPS).

A district court may terminate parental rights to a child if the court finds that the parent

> is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing, physical, mental, or emotional needs of the child.

Minn. Stat. § 260C.301, subd. 1(b)(4). The county "must prove a consistent pattern of specific conduct or specific conditions existing at the time of the hearing that appears will continue for a prolonged, indefinite period and that are permanently detrimental to the welfare of the child." *In re Welfare of Children of T.R.*, 750 N.W.2d 656, 661 (Minn. 2008) (quotation omitted). In a termination-of-parental-rights case, the district court relies "to a great extent upon the projected permanency of the parent's inability to care for his or her child." *In re Welfare of Solomon*, 291 N.W.2d 364, 368 (Minn. 1980) (citation omitted).

The district court concluded that P.L.G. was palpably unfit to parent because her diagnoses of depression, anxiety, and narcissistic personality disorder with strong

3

compulsive and histrionic features significantly impairs her ability to function and to perform life skills. The district court found that P.L.G. feels overwhelmed and anxious, and is unable to sleep or get out of bed. Her mental-health issues render her unable to ensure that the children receive proper and timely medical treatment and that they regularly attend school. It found that P.L.G.'s steadfast denial of her mental-health issues "directly affects her ability to parent in the present and for the foreseeable future."

Here, clear and convincing evidence supports the district court's findings. A diagnosis of mental illness alone does not "permit termination of parental rights." *In re Welfare of Kidd,* 261 N.W.2d 833, 835 (Minn. 1978). But a termination can be affirmed when a parent's mental illness is detrimental to the children. *See id.* at 836.

P.L.G.'s case plan required her to comply with recommendations arising from her court-ordered psychological and parenting assessment, which included undergoing a psychiatric examination and regularly seeing a therapist to address her mental-health issues. Several county-referred providers testified that P.L.G.'s mental-health issues, coupled with her low-intellectual functioning, negatively affected her ability to parent. The children's court-appointed guardian ad litem (GAL) testified that P.L.G.'s untreated mental-health issues prevented her from having any insight into her lack of parenting skills and she is therefore incapable of managing the children's medical issues or ensuring that they regularly attend school. Over a fifteen-month period, P.L.G. received intensive, one-on-one parenting training and education, but failed to demonstrate significant progress. Several county-referred service providers described P.L.G.'s general intransigence toward receiving advice, including assistance from a mental-health specialist. She repeatedly

exhibited confusion as to when to show up for appointments, including court-ordered visits with her children. The county protection worker testified that P.L.G.'s depression and anxiety significantly impaired her ability to perform routine, day-to-day tasks, provide a suitable home for the children with adequate food and furniture, or recognize and address the children's medical issues. P.L.G. also presented no evidence that she ever received mental-health therapy or a psychiatric evaluation.

At trial, P.L.G. categorically denied suffering from any mental-health issues. The district court found P.L.G.'s statements not credible, and we defer to the court's credibility determinations. *Vangsness v. Vangsness,* 607 N.W.2d 468, 472 (Minn. App. 2000). The district court's conclusion that P.L.G.'s conduct will persist for a prolonged, indefinite period, and that it is permanently detrimental to the welfare of the children, is supported by clear and convincing evidence. *See T.R.*, 750 N.W.2d at 661.

Because we conclude that termination on the grounds of palpable unfitness to parent was supported by the record, we do not address P.L.G.'s arguments as to the district court's termination on other statutory grounds. *See In re Welfare of Children of R.W.*, 678 N.W.2d 49, 55 (Minn. 2004) ("Termination of parental rights will be affirmed as long as at least one statutory ground for termination is supported by clear and convincing evidence and termination is in the child's best interests.").

## II.     Termination of parental rights is in the best interests of the children.

A district court must not only identify a statutory basis for termination, but must also determine whether termination is in the child's best interests. Minn. Stat. § 260C.301, subd. 7 (2014). When analyzing the child's best interests, "the court must balance three

factors: (1) the child's interest in preserving the parent-child relationship; (2) the parent's interest in preserving the parent-child relationship; and (3) any competing interests of the child." *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992). "Competing interests include such things as a stable environment, health considerations and the child's preferences." *Id.* "Where the interests of parent and child conflict, the interests of the child are paramount." Minn. Stat. § 260C.301, subd. 7.

The district court concluded that it was in the best interests of the children that P.L.G.'s parental rights be terminated because she would be unable to care for them in the reasonably foreseeable future due to her unaddressed mental-health and parenting issues. It found P.L.G.'s intransigence, "whether willful or as a result of her cognitive or mental abilities," to be "an absolute roadblock to her progress as a parent." The district court based its best-interests determination on the children's need for permanency, concluding that the children's out-of-home placement provided steady, dependable care.

On this record, the district court did not clearly err in finding that termination of P.L.G.'s parental rights was in the children's best interests. The evidence demonstrates that P.L.G. loves her children, and that they love her. But the children's GAL and many county-referred service providers testified that P.L.G.'s mental-health issues significantly impaired her parenting abilities.

At the time of trial, the children had been in their current foster home for over a year and were thriving. "[T]he best interests of a child are not served by delay that precludes the establishment of parental bonds with the child by either the natural parent or adoptive parents within the foreseeable future." *In re Welfare of S.Z.,* 547 N.W.2d 886, 893 (Minn.

6

1996).  B.C.D.G. was regularly attending school and T.L.T.'s growth and development were on target.  Neither children had experienced any medical issues in foster care.

P.L.G. argues that the district court failed to consider transferring legal custody to D.P., B.C.D.G.'s paternal grandmother, instead of terminating her parental rights. "Termination of parental rights and adoption, or guardianship to the commissioner of human services through a consent to adopt, are preferred permanency options for a child who cannot return home."  Minn. Stat. § 260C.513(a) (2014).  "If the court finds that termination of parental rights and guardianship to the commissioner is not in the child's best interests, the court may transfer permanent legal and physical custody of the child to a relative when that order is in the child's best interests."  *Id.*

We are concerned by the district court's failure to address P.L.G.'s proposal to shift legal custody to D.P., and the lack of findings preclude us from engaging in any meaningful appellate review on this issue.  But we are unable to assign error because the statute does not require the district court to make findings regarding transfers of legal custody in its determination of the children's best interests.  *See id.*

### III.    The district court did not abuse its discretion in admitting the challenged exhibits.

Evidentiary rulings are discretionary with the district court, and we will reverse only if the ruling was an abuse of discretion and it prejudiced the objecting party.  *In re Welfare of Children of J.B.*, 698 N.W.2d 160, 172 (Minn. App. 2005), *review dismissed* (Minn. May 3, 2005).

P.L.G. challenges the admissibility of five exhibits, arguing that the county failed to establish a sufficient foundation for admission under the business-records exception to the hearsay rule. Under Minn. R. Evid. 803(6), a party seeking to have a document admitted as a business record must present testimony establishing that

> the records were (1) made by a person with personal knowledge of the matters recorded and a business duty to report accurately or from information transmitted by a person with such knowledge, (2) made at or near the time of the recorded event, (3) kept in the course of a regularly conducted business activity, and (4) made as part of the regular practice of that business activity.

*In re Welfare of Child of Simon*, 662 N.W.2d 155, 160 (Minn. App. 2003). While Rule 803(6) does not require the records custodian to testify, it does require the witness laying foundation "to be familiar with how the business in question compiles its documents." *Id.* The disputed exhibits consist of medical records of P.L.G.'s two sons, M.W. and T.L.T.; a diagnostic and functional assessment of P.L.G. completed by an Adult Rehabilitative Mental Health Service (ARMHS) employee; and monthly progress notes by an ARMHS parenting educator concerning her contact with P.L.G.

We conclude that the county generally failed to establish that the exhibits satisfied Rule 803(6). *See Simon*, 662 N.W.2d at 160 (concluding that a social worker was unable to provide foundation for a therapist's notes and that his testimony did not satisfy the foundational requirements of Rule 803(6)). We note, however, that the assistant director of ARMHS provided sufficient foundation for Exhibit 51, the monthly progress notes prepared by an ARMHS parenting educator. *See id*. at 160-61.

P.L.G. argues that she was prejudiced by the district court's admission of these objected-to documents because she was deprived of the opportunity to cross examine the

authors of the exhibits, and because the exhibits contained double hearsay. We recognize county attorneys are increasingly relying on written hearsay materials in child-protection cases due to the "mushrooming body of judicial activity" in this area of law, but we caution the county against sidestepping its legal obligation to comply with the rules of evidence. *See In re Welfare of D.J.N.*, 568 N.W.2d 170, 175 (Minn. App. 1997).

Nevertheless, we conclude that P.L.G. was not prejudiced because substantial independent and undisputedly admissible evidence supported the district court's findings. P.L.G. also does not assert that the records are inaccurate or unreliable. *See Simon*, 662 N.W.2d at 160 (noting that business records are "presumed to be reliable"). And because this was a bench trial, any prejudice stemming from erroneously admitted evidence would be minimal. *State v. Burrell*, 772 N.W.2d 459, 467 (Minn. 2009) (recognizing the diminished risk of unfair prejudice in a bench trial).

**Affirmed.**